**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A1973. WILLIAMS v. THE STATE.                          BO-076C

BOGGS, Judge.

After a fundamentally flawed bench trial which began in the former Recorder's Court of DeKalb County,[1] Kevin Andre Williams was convicted of "driving without a drivers license," assessed a substantial fine, and sentenced to jail and a lengthy term of probation. In the course of this trial, Williams was not adequately informed of the consequences of proceeding with a bench trial or of representing himself without an attorney, nor was he adequately informed of the charges against him – which changed mid-trial at the instigation of the prosecutor. Finally, despite all these errors on the part of the trial court and the State which worked to Williams' disadvantage, the State

---

[1] The Recorder's Court of DeKalb County was abolished as of March 3, 2015, and the Traffic Division of DeKalb State Court was created to replace it. 2015 Ga. Laws p. 3501 et seq. Williams' prosecution spanned the transition to the new court.

still failed to present sufficient evidence to support the conviction. We therefore reverse.[2]

Construed to support the verdict, the record shows that Williams initially was stopped by a DeKalb County police officer for speeding. The officer did not cite him for speeding, however, but simply gave him a warning. During the traffic stop, Williams presented a valid Florida drivers' license to the officer. But the officer testified that "upon running him" he discovered that Williams' "privilege in Georgia was not valid. . . and he was written a citation for . . . not having a license."[3] The officer testified that he explained to Williams that even though his Florida license was valid, he could not drive in Georgia "per . . . the Department of Driver Services." No further explanation was offered as to the reason for the purported invalidity. The officer testified that Williams told him he "did live in Georgia" and had "for awhile;"

---

[2]The process in which Williams found himself enmeshed was particularly troubling. After waiving his right to counsel and to a jury trial, Williams was at the mercy of the State, which showed no mercy. His attempts to comply with the instructions of the police officer, who then testified against him, were used by the State to win a conviction for a crime other than that with which he originally was charged, with the acquiescence if not the assistance of the trial court.

[3]The citation was written for "No license in violation of code section 40-5-20." In a "remarks" section, the officer noted, "Has FL LIC #[number] which valid but GA priv not valid. Advised to get GA lic."

prompted by the prosecutor, the officer agreed that Williams had "been living in Georgia for more than 30 days." The officer told Williams that "he could've went to jail" and instructed him that he needed to "get a Georgia license."[4]

Williams testified that he "wasn't aware" that there was any problem with his drivers' license. He added that he went the same day to the Georgia drivers' license office as instructed by the police officer and obtained a Georgia license "without any issues" and without paying any costs. On cross-examination, he insisted that he "wasn't living as a resident" in Georgia.[5] The prosecutor then asked if he did not become a resident when he obtained a Georgia drivers' license using an address in Georgia, and he responded that he did so, but only because the police officer told him that he had to get a Georgia license, and added that it was only a temporary address.

Williams was found guilty of "no license" by the judge "under 40-5-20," without specifying whether he was found guilty because his driving privileges in Georgia had been suspended, or because he was a permanent resident of Georgia for

---

[4]At trial, as we note in Division 4, below, the State produced no evidence to show that Williams' "privilege in Georgia was not valid." At oral argument, Williams' counsel speculated that a long-ago Georgia traffic ticket might have been the source, but noted that there was no evidence on this point.

[5]At oral argument, the State erroneously asserted that Williams never raised this issue at trial.

more than 30 days without obtaining a Georgia drivers' license.[6] At the hearing on Williams' motion for new trial, the trial court asserted that he was found guilty of both. He was sentenced to a jail term and a fine, as well as 12 months' probation. His motion for new trial was denied, and he appeals.

1. As a preliminary matter, the State argues that most of Williams' claims, including his sufficiency claim, cannot be considered because the electronic audio recording of Williams' bench trial is not a "transcript" within the meaning of OCGA § 5-6-41.[7] But we do not consider that argument, because the State has waived this contention by failing to interpose a timely objection. "Appellee shall be deemed to have waived any failure of the appellant to comply with the provisions of the Appellate Practice Act relating to the filing of the transcript of the evidence and

---

[6]As Williams' counsel pointed out at oral argument, driving with a suspended license or suspended privilege to operate a motor vehicle in Georgia is governed by OCGA § 40-5-121. OCGA § 40-5-20 (a) by its terms does not apply "to a person driving with a suspended license or license that has been revoked."

[7]The audio recording of the trial was transmitted to this court on a USB flash drive. Compare *Banks v. State*, 332 Ga. App. 259, 260 (1) n.1 (772 SE2d 57) (2015), in which the parties submitted a "purported audio recording," but the compact disc contained no accessible file. We observe in passing that such a recording appears to be analogous to other recordings officially made in the course of litigation, such as video depositions or recorded statements, and may form part of the record transmitted to this court under OCGA § 5-6-43. The flash drive was submitted to this court as a supplemental record, not a transcript. But we need not reach that issue.

proceedings or transmittal of the record to this Court, unless objection thereto was made and ruled upon in the trial court prior to transmittal and such order is appealed as provided by law." Court of Appeals Rule 20; see also *Bowden v. State*, 304 Ga. App. 896, 898 n. 1 (698 SE2d 372) (2010) (arguments not raised by the State in the trial court will not be considered for the first time on appeal). The State waived any objection not only below, but also in this court, when it failed to object either to Williams' motion to supplement the record with the recording, or to Williams' request for oral argument, in which he again indicated his intention to rely on the recording.

2. Williams argues that the trial court failed to apprise him of the risks of proceeding without the representation of an attorney, and that he was also not advised at his arraignment, before a different judge, of the risks of proceeding without a jury trial. He contends from this that his waivers of his right to counsel and a jury trial therefore were not made knowingly or intelligently. We agree.

(a) The question of whether Williams knowingly and intelligently waived his right to counsel is controlled by our recent decision in *Banks v. State*, 332 Ga. App. 259 (772 SE2d 57) (2015), which is directly on point. There, we observed that

> [u]nder Georgia law, whether a charge is a felony or a misdemeanor, an
> accused facing a term of imprisonment is constitutionally guaranteed the

5

right to counsel and must waive that right. Such a waiver of counsel is valid only if it is made with an understanding of (1) the nature of the charges, (2) any statutory lesser included offenses, (3) the range of allowable punishments for the charges, (4) possible defenses to the charges, (5) circumstances in mitigation thereof, and (6) all other facts essential to a broad understanding of the matter. When the record is silent, waiver is never presumed, and the burden is on the State to present evidence of a valid waiver. The State may carry its burden by showing a valid waiver through either a trial transcript or other extrinsic evidence, including an appropriate pretrial waiver form. However, in order for the State to use a pretrial waiver form to show that a defendant has intelligently elected to represent himself at trial after being advised of his right to counsel and the "dangers" of waiver, the form should outline those pertinent dangers: such as (1) the possibility of a jail sentence; (2) the rules of evidence will be enforced; (3) strategic decisions with regard to voir dire and the striking of jurors must be made by defendant; (4) strategic decisions as to the calling of witnesses and/or the right to testify must be made by defendant; and (5) issues must be properly preserved and transcribed in order to raise them on appeal. In other words, a proper waiver form should contain the warnings, themselves, not just conclusions.

(Citations and punctuation omitted.) Id. at 259-260 (1). Here, Williams initialed and

signed a form entitled "Record of Defendant Entering a Plea of Not Guilty and Faretta

6

Warning."[8] It informed him that he could receive a maximum fine of $5,000 and up to 12 months in jail, but it did not describe the nature of the charges against him. Instead, it merely recited that an attorney could explain some but not all of the factors listed in *Banks*, quoting them but never explaining what they were.[9] It further recited that Williams had been informed that he was entitled to an attorney, that "[a]ll litigation can be complex," that "an attorney can assist me in making strategic decisions" such as those listed in *Banks*, and that an attorney could "preserve [his] case for appeal." In other words, it "contained only conclusory statements concerning [his] rights rather than an explanation of the dangers of proceeding to trial pro se. [Cit.]" Id. at 260 (1). The waiver form, standing alone, thus did not show that Williams' waiver was "made with an understanding" of those factors, as required by Georgia law. 332 Ga. App. at 259 (1).

---

[8]*Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975).

[9]At the hearing on his motion for new trial, Williams testified that he did not understand the meaning of some of these terms. He also noted that he believed the process would be "just a traffic hearing" where the officer and he made their cases and the judge made a ruling.

An insufficient pretrial waiver form may be supplemented by showing that a defendant has been advised individually and in detail of the dangers of proceeding pro se:

> We believe that the best way to ensure that a defendant fully appreciates the right he has chosen to relinquish, and that trial judges fully understand their duty in this process, is for the trial court to address each factor, individually, and on the record. By so doing, a trial court can likely avoid the time and expense of another trial.

(Citations and punctuation omitted.) *Cook v. State*, 297 Ga. App. 701, 703 (678 SE2d 160) (2009). While the State maintains that this was the case, it has misstated what occurred below. At the hearing on Williams' motion for new trial, the trial court recited at length its *customary* practice in informing defendants of their rights as support for its decision. Nevertheless, the audio recording of the trial demonstrates that the trial court did not follow its stated practice. When Williams' case was called, the trial court recited that Williams had waived his right to a jury trial and to an attorney via the form, asked him to identify his signature and initials on the form, and asked him if he was under the influence of alcohol or drugs. But the sum total of the trial court's individual colloquy with Williams on the issue of waiver was: "And you want to go forward today with this bench trial, is that correct?" to which he responded

that he did, followed by: "And did you want an attorney?" to which he responded that he did not. In other words, "the record is devoid of a knowing and intelligent waiver of [Williams'] right to counsel." *Banks*, supra, 332 Ga. App. at 259 (1).

The State in its brief relies primarily upon its unsuccessful contention that the audio recording of the trial should not be considered by this court. Essentially, its position is that it is not responsible for Williams' "bad decisions" even though his decisions were made in the context of the trial court's failure to explain the dangers associated with proceeding to a bench trial pro se. Although the State makes a perfunctory argument in its brief that Williams' waiver was knowing and intelligent, at oral argument the solicitor acknowledged that the pretrial waiver form alone was insufficient to establish a waiver.

Had Williams been represented by counsel, his attorney most likely would have objected to the hearsay testimony introduced by the State, challenged the citation or the failure of the evidence to support the offense charged, and moved for a directed verdict, which should have been granted. "Accordingly, we cannot say that the error did not contribute to the judgment." (Citation omitted.) *Tucci v State*, 255 Ga. App. 474, 477 (2) (565 SE2d 831) (2002).

9

(b) Likewise, the State has not demonstrated that Williams was advised of the risks of waiving his right to a jury trial when he signed a preprinted form at his arraignment.

> A defendant's right to trial by a jury is a fundamental constitutional right that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. A defendant's consent to a trial without a jury need not be in any particular, ritualistic form; the trial court need only conduct an inquiry of the accused on the record so as to ensure that the waiver is knowing, voluntary and intelligent . . . . the trial court should ask the defendant sufficient questions on the record to ensure that the defendant's waiver is knowing, voluntary, and intelligent.

> When a defendant challenges his purported waiver of the right to a jury trial, the State bears the burden of showing that the waiver was made both knowingly and intelligently, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made. Such extrinsic evidence may include testimony by or an affidavit from trial counsel about his specific recollections; routine or standard practices; and evidence regarding the defendant's intelligence and cognitive ability.

(Citations and punctuation omitted.) *Green v. State*, 323 Ga. App. 832, 834-835 (2) (748 SE2d 479) (2013). Here, as in *Green*, "the record does not contain a colloquy

10

showing that the trial court asked [Williams] sufficient questions on the record to ensure that his waiver of his right to a jury trial was knowing, voluntary, and intelligent." Id. at 835 (2).

At the hearing on the motion for new trial, the trial court asserted with respect to the initial arraignment form that it "would have a hard time believing that a judge would sign off saying that the Court finds the defendant has knowingly and voluntarily waived his or her rights . . . without having any type of conversation." But the burden is on the State to demonstrate, whether by the record or extrinsic evidence, that such a conversation or colloquy took place, and the trial court's mere belief is no cure for the entire failure of the State to meet its burden.

3. Williams asserts that the vague and general wording of the traffic citation charging him with "no license in violation of code section 40-5-20" failed to give him adequate notice of the charges against him. But, as the State correctly points out, he

> waived any objection to the form of the accusation by signing the charging document and entering a not guilty plea at the beginning of trial. The right to be tried upon an accusation that is perfect in form and in substance is waived when a defendant fails to timely and properly challenge the accusation. Because [Williams] failed to challenge the accusation by way of special demurrer or by filing a motion to quash

11

before entering [his] . . . plea, [he] waived the right to a perfect accusation.

(Citations, punctuation, and footnote omitted.) *Sevostiyanova v. State*, 313 Ga. App. 729, 741 (18) (722 SE2d 333) (2012).[10] But this does not dispose of the more important question of the failure of the evidence to prove the charge in the citation, as discussed in Division 4, below.

4. Finally, we consider Williams' contention that the evidence produced at trial was insufficient as a matter of law to support his conviction. Here, as with other enumerations of error, the State makes no attempt to address the merits of Williams' argument, relying wholly on its erroneous assertion that the trial court proceedings may not be considered. But a review of the bench trial demonstrates that the State, despite changing its theory of the alleged offense mid-trial, still failed to prove that Williams was in violation of the law.

(a) We first consider the State's initial attempt to prove that Williams violated the law by driving while his driving privileges were suspended in Georgia. As noted above, this offense is governed not by OCGA § 40-5-20, the Code section under

_____

[10]We agree with Williams that, given the trial court's failure to properly inform him of his right to counsel, it is hardly surprising that a pro se defendant would be unaware of the necessity of a pretrial demurrer.

12

which Williams was charged, but by OCGA § 40-5-121. Therefore, even if the State had shown that Williams' Georgia driving privileges were suspended, the fatal variation between the accusation and the proof at trial would have rendered the evidence insufficient. See, e.g., *Younger v. State*, 293 Ga. App. 20, 21-22 (666 SE2d 460) (2008) (evidence insufficient due to fatal variance: appellant charged with operating vehicle without license plate, but evidence showed only no license plate on towed trailer.)

In any event, the only evidence in support of this charge is the police officer's testimony that "upon running him," which appears to mean entering his drivers' license information into a computer database, the officer found that Williams' Georgia driving privilege was "not valid." No documentary evidence was presented to support the officer's claim, and no testimony was adduced regarding how or for what reason Williams' privileges purportedly were suspended.[11] Williams testified at trial that he knew of no problem with his license. When he went to get a Georgia

---

[11]Williams also produced documentary evidence at the hearing on the motion for new trial that his drivers' license was valid and his driving record contained no suspensions. He believed that the officer's assertion was simply "a case of misidentity."

license as instructed by the police officer, he obtained a license the same day "without any issues" and at no cost, because he is a veteran.[12]

The new Evidence Code, OCGA § 24-9-924 (a), governs the "admissibility of records of Department of Driver Services" and "computer transmitted records," and permits the introduction of "information otherwise admissible . . . obtained from any terminal lawfully connected to the Georgia Crime Information Center without the need for additional certification of such records." But no evidence was presented of the contents of a "record" or that it was derived from a lawfully connected terminal. Moreover, OCGA § 24-8-803 provides for a "public records" exception to the hearsay rule, but subsection (8) (B) excludes "against the accused in criminal proceedings, matters observed by police officers and other law enforcement personnel in connection with an investigation."

---

[12]The State argued at the hearing on the motion for new trial that in order for Williams to obtain a Georgia license, he "would have had to fix that suspension on the Florida license" before attempting to exchange it for a Georgia license. But this stands the presumption of innocence, as well as the burden of proof, on its head. The State asserts, without any evidence of record, that Williams "would have had to" pay a fine or purge himself of contempt in order to obtain a Georgia drivers' license on the same day he was stopped by the officer. The State made this assertion despite Williams' uncontradicted testimony that he simply surrendered his Florida license and obtained a Georgia license at the Georgia DDS without incident and without any payment.

14

Under the new Evidence Code, hearsay if unobjected to is admissible. OCGA § 24-8-802.[13] But even if the officer's testimony were deemed admissible, our Supreme Court has held that a report of a state or national crime information center record, while it may be reliable enough to establish probable cause for an arrest, "would not be sufficient to authorize *conviction*." (Emphasis in original.) *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176) (1996) (radio check reported outstanding bench warrant). In *Harvey* and the cases cited therein, the report proved to be inaccurate. Id. Here, the State failed to present any written record at trial or at the hearing on the motion for new trial showing that Williams' driving privileges had in fact been suspended. And, in addition to his trial testimony, Williams presented documentary evidence at the hearing on his motion for new trial that no such suspension existed and that his Florida license was valid in Georgia. The officer's

[13]We note that the trial court allowed the State to introduce hearsay testimony without comment. In contrast, while Williams was attempting to testify in his own defense, after the State interposed one hearsay objection to Williams' account of his telephone conversation with the Department of Driver Services, which was sustained, the trial court *sua sponte* interrupted Williams continually to tell him that he could not introduce hearsay testimony, to instruct him that he could not argue his case during his testimony, to chastise him for not answering "yes or no" to the prosecutor's question as to whether he was a resident of Georgia, and on one occasion to reprimand him because the court erroneously believed that Williams was conducting cross-examination rather than testifying.

conclusory testimony at trial that Williams' record showed a suspension, based solely on his verbal report that upon "running him" he found his "privilege in Georgia was not valid," is therefore insufficient to support a conviction.

(b) When it became apparent that the officer's testimony with regard to a supposed suspension of driving privileges in Georgia was somewhat tenuous, the State pivoted from the allegation that Williams was driving while his Georgia driving privileges were suspended, to an allegation that he was driving with a Florida license after having been a resident of Georgia for more than thirty days. OCGA § 40-5-20 (a).

Williams testified at trial that he "wasn't living as a resident" of Georgia. At the hearing on Williams' motion for new trial, additional evidence was presented that Williams, a Marine Corps veteran and former Florida law enforcement officer, was temporarily on assignment in Georgia as part of his duties while training for a position as a federal corrections officer. While he had lived in Georgia on three different occasions in connection with this training, he always returned to his home in central Florida, which he owned. At the time of the events giving rise to this prosecution, in December of 2014, his stay in Georgia had begun in the fall, and he had stayed with friends, in a hotel, and in an apartment.

The Georgia Code governing drivers' licenses defines "resident" as "a person who has a permanent home or abode in Georgia to which, whenever such person is absent, he or she has the intention of returning." OCGA § 40-5-1 (15). This subsection also creates a rebuttable presumption that a person is a resident when that person "accepts employment or engages in any trade, profession, or occupation in Georgia," places children in school in Georgia, or "except for infrequent, brief absences, has been present in the state for 30 or more days." OCGA § 40-5-1 (15) (A), (B). But "as a matter of constitutional due process, statutory presumptions cannot be conclusive on the factfinder or shift the burden of proof to the defendant in criminal cases. [Cits.]" *Castillo-Solis v. State*, 292 Ga. 755, 759 (2) n.8 (740 SE2d 583) (2013) (driver may defend against charge of driving without license "by offering other evidence, tangible or testimonial, that he had a valid license, from Georgia or another jurisdiction, at the time he was stopped, to rebut the presumption.")

In *Castillo-Solis*, our Supreme Court also noted that

OCGA § 40-5-21 exempts 13 categories of drivers from the licensing requirement, including . . . drivers with a temporary or limited connection to Georgia or in situations not involving regular use of the roads. In particular, OCGA § 40-5-21 (a) (2) exempts any nonresident of Georgia who could receive a Georgia driver's license if he or she were a Georgia resident and who has in his or her immediate possession

17

a valid driver's license issued to him or her in his or her home state or country.

(Punctuation omitted.) Id. at 757(2) n.4. And this court has construed OCGA §§ 40-5-1 (15) and 40-5-20 (a) together to conclude that "the intention of the General Assembly was . . . to permit *visitors, with no intention of becoming residents*, to drive here without obtaining a Georgia license." (Emphasis supplied.) *Diaz v. State*, 245 Ga. App. 380, 383 (4) (537 SE2d 784) (2000).

The State argued at trial that the Georgia license and "permanent" address that Williams obtained after the traffic stop proved that he was a resident. But, as Williams observes, "this tautological reasoning borders on entrapment." Williams testified that he obtained that license only because he was instructed to do so by the police officer, and that the address he used to obtain it was only temporary. Other than attempting to obtain an admission from Williams that he was a resident, an admission that he refused to give, the State produced no evidence to show that Williams had a "permanent home or abode in Georgia." The State in questioning Williams repeatedly used the term "living" rather than "residing," and made no attempt to elicit information tending to show his residence, such as voter registration, permanent mailing address, or other contacts with Georgia. See generally *Cohen v.*

*Cohen*, 300 Ga. App. 7, 9 (2) (684 SE2d 94) (2009) (listing indicia of residence for purposes of jurisdiction). Moreover, Williams repeatedly testified at trial that he "wasn't living as a resident" and that the apartment that he rented was "a temporary address" or "temporary residence." And he successfully grasped the central difficulty with the State's case: that he was "issued a citation for not having a license, not for changing over." Construing the entire record in favor of the verdict, we conclude that Williams' testimony at trial rebutted the presumption created by OCGA § 40-5-1 (15) (B).

As a result of the State's conduct, Williams was convicted of a crime with which he was not charged, jailed, fined over $600, and sentenced to a year of probation. Moreover, his conviction and sentence carry numerous collateral consequences, including jeopardizing Williams' current job and future prospects in his chosen career of law enforcement. As noted by this Court at oral argument, the State and the trial court had any number of opportunities to terminate this meritless prosecution, including when Williams presented a valid Florida license, when the allegations regarding Williams' residence were called into question, when the State failed to introduce sufficient evidence to prove its case at trial, when Williams produced additional evidence at the hearing on the motion for new trial, or when this

19

appeal was briefed. Yet the State pressed on, forcing Williams to expend substantial time and money to clear his name and wasting the State's scarce resources in a failed prosecution. Even in this court, the State has attempted to avoid the consequences of this miscarriage of justice by relying not upon the merits of its case or the applicable law, but upon a baseless assertion that Williams failed to perfect the record.

"The State has the power to take liberty, but commensurate with that power is the duty to do justice." *Wesley v. State*, 225 Ga. 22, 24 (2) (165 SE2d 719) (1969). Justice was denied to Williams in this case, and accordingly, the judgment of conviction is reversed.

*Judgment reversed. Doyle, C. J. and Phipps, P. J., concur*.