**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 21, 2016**

# In the Court of Appeals of Georgia

A16A0463. TAYLOR v. THE STATE.                          PE-016

PETERSON, Judge.

Following a jury trial, Joshua Taylor was convicted of homicide by vehicle in the first degree, driving without a valid license, and operating a vehicle without a current registration. Taylor appeals from the denial of his motion for new trial and argues that (1) the trial court erred in denying his motion to suppress the results of a chemical test, (2) the evidence was insufficient to sustain his convictions, (3) the trial court erred in qualifying a witness as an expert, and (4) he received ineffective assistance of counsel. We reverse Taylor's convictions for driving without a valid license and operation of a vehicle without a current registration because trial counsel was ineffective in failing to object to hearsay evidence that was the only evidence supporting these charges. We affirm Taylor's conviction for vehicular homicide

because the trial court did not err in denying his motion to suppress or in qualifying the witness as an expert, the evidence was sufficient to support his convictions, and trial counsel's performance on other issues did not constitute ineffective assistance.

"On appeal, the evidence must be viewed in the light most favorable to support the verdict, and the appellant no longer enjoys a presumption of innocence." *Culver v. State*, 230 Ga. App. 224, 224 (496 SE2d 292) (1998) (citation omitted). So viewed, the evidence shows that around 2 a.m. on the morning of July 17, 2012, Laquilla Oglesby was driving her uncle, Keith Thompson, south on I-85 in Atlanta. Oglesby and Thompson saw a black Jeep driven by Ronnie Bascom, the victim, swerve and crash into a guardrail near exit 84, and the vehicle came to a rest on the exit ramp. Oglesby stopped her car to render assistance to Bascom, who had staggered out of his vehicle. A passerby asked if Oglesby and Bascom were okay, and Oglesby asked the passerby to call the police. While they waited for police to arrive, Oglesby stood by Bascom near the driver's side door of his car. Meanwhile, because the area was not illuminated, Thompson began waving a light in order to alert oncoming traffic. Most of the cars exiting the off-ramp slowed down and were able to move around Bascom's crashed vehicle.

2

One car, driven by Joshua Taylor, did not slow down. Taylor was driving far faster than the rest of the traffic. While Oglesby was talking to Bascom, she saw the headlights of Taylor's car quickly approaching and she ran out of the way. Oglesby did not see what happened to Bascom, but she saw that Taylor's car had hit a concrete barrier and had caught on fire.

Shortly thereafter, police officers arrived at the scene and observed that Taylor's car was on fire and that he was sitting in the driver's seat. After police officers pulled Taylor out of his car, they observed that his speech was slurred, he smelled of alcohol, and appeared to be extremely intoxicated. Taylor told police officers that his friend was driving and gave multiple names for his friend, but the officers did not find anyone in the vicinity that matched Taylor's description of his friend. The officers did find Bascom lying in the grass median, and Bascom was not conscious or breathing. Bascom died as the result of blunt force trauma to the head and neck, and the medical examiner explained that the force of the impact was so great that the ligaments connecting Bascom's head to his neck were ruptured.

As a result of the fatality, Officer Christopher Hewitt, head of the Traffic Fatality Investigations Unit with the Atlanta Police Department, was dispatched. Officer Hewitt sent investigators to the scene while he went to Grady Hospital, where

Taylor had been sent. When Officer Hewitt arrived at Grady, Taylor was conscious and lying on a gurney in the trauma bay. Officer Hewitt questioned Taylor about the accident. Officer Hewitt did not tell Taylor that he was under arrest, and Taylor appeared to understand everything that was happening. During his conversation with Officer Hewitt, Taylor admitted that he had three beers and several shots. Officer Hewitt observed that Taylor had slurred speech, his eyes were glassy and bloodshot, he smelled of alcohol, and he had ligature marks from his left shoulder down across his chest, which was consistent with a seat-belt burn.

Based on Officer Hewitt's observations and Taylor's admissions, Taylor was placed under arrest. A police officer read the implied consent notice to Taylor, and he refused to submit to chemical testing. Almost three hours after the accident, Officer Hewitt applied for and obtained a search warrant to collect a blood sample. The results of the chemical test of Taylor's blood revealed that he had a blood-alcohol concentration of 0.196 and tested positive for the presence of marijuana, cocaine, and Xanax. Officer Hewitt testified that, in completing the search warrant application, he conducted a computer check of Taylor's driver's license and discovered that his license had been suspended. Officer Hewitt also testified that the vehicle registration on Taylor's car had expired.

1. Taylor argues that the trial court erred under *Franks v. Delaware*, 438 U.S. 154 (98 S.Ct. 2674, 57 LEd2d 667) (1978), in denying his motion to suppress the results of the chemical test of his blood because the search warrant contained numerous false statements and the truthful portions of the warrant affidavit did not establish probable cause. We disagree.

Under *Franks*, if a defendant shows by a preponderance of the evidence that the search warrant affiant knowingly and intentionally, or with reckless disregard for the truth, makes a false statement in the affidavit, then the affidavit's false material must be set aside. *State v. Hall,* 276 Ga. App. 769, 772 (624 SE2d 298) (2005). The affidavit's remaining content must be re-examined and if that content is insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* (citation and punctuation omitted).

In this case, the record shows that Officer Hewitt made several false statements in his warrant affidavit. He stated that Taylor was in the county jail at the time the application was made, but Taylor was actually at Grady Hospital. He said Taylor refused to submit to field sobriety tests and refused to provide a sample of his breath,

5

but no such test or breath samples were requested. Officer Hewitt also stated that he initiated a traffic stop of Taylor's vehicle, but no officer made a traffic stop.

Officer Hewitt testified that the misstatements were unintentional and were attributable to his inability to change certain fields in the computer program he used to prepare the warrant application.[1] The trial court believed Officer Hewitt that the false statements were unintentional, but it did not consider whether the statements were made with a reckless disregard for the truth.

We need not — and thus do not — decide whether any of these false statements were made knowingly and intentionally or with reckless disregard for the truth, because the rest of the information contained in the affidavit — which Taylor does not challenge — establishes probable cause to believe Taylor was driving while impaired. Specifically, Officer Hewitt swore that there was evidence showing that Taylor was the driver of a 2008 Saturn that had been involved in an automobile

---

[1] Officer Hewitt explained that computer program had certain fields that automatically populated and could not be changed. For instance, Officer Hewitt testified that the computer program automatically populated the jail's address when Officer Hewitt correctly typed that Taylor was in custody, and Officer Hewitt could not correct it to reflect that Taylor was in custody at Grady Hospital. Additionally, although Officer Hewitt checked the field that indicated that Taylor refused field sobriety tests, instead of the field indicating that Taylor agreed to complete such tests, Officer Hewitt specifically stated in his affidavit that field tests were not conducted because Taylor was transported from the scene by ambulance.

accident in which an unidentified black male (Bascom) had been killed. Officer Hewitt also swore that while being interviewed at Grady Hospital, Taylor had admitted to drinking earlier that night. These circumstances alone were sufficient for a reasonable officer to conclude that Taylor had been driving under the influence and, thus, the magistrate had probable cause to issue the search warrant. *See Hughes v. State*, 296 Ga. 744, 750 (2) (770 SE2d 636) (2015) (officers had probable cause to believe that defendant was under the influence of some intoxicant when they had reason to believe he caused a fatal accident and he had a number of unknown pills on his person).

Although we are able to conclude that the warrant affidavit established probable cause without the false statements, we must pause to observe the problematic nature of the warrant application process involved in this case. The magistrate judge issued a warrant based on an application containing numerous demonstrably false statements. The State places blame for the false statements on the software program used. If this is true, then the continuing use of a software program that automatically inserts false statements into the warrant applications of one of the largest law enforcement agencies in this state is, to say the least, deeply troubling. And regardless of what caused false statements to be present in the affidavit, an

7

officer still swore that the contents of the affidavit were true and presented the application as such to a magistrate judge. It should not have to be said that individuals presenting testimony to a court have a duty of candor, or that individuals making statements under oath should take great care to make sure those statements are truthful. Unfortunately, we are compelled to say what should be obvious because not enough care was taken in this case, and because the flaws displayed in this warrant application process seriously undermines the integrity of the judicial process. Despite these flaws, the warrant application still had sufficient information to establish probable cause, and therefore we are required to conclude that the trial court did not err in denying Taylor's motion to suppress.

2. Taylor argues that the evidence was insufficient to support his convictions. We disagree.

When we review challenges to the sufficiency of the evidence, we neither "weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Otuwa v. State*, 319 Ga. App. 339, 339-40 (734 SE2d 273) (2012)

8

(citing *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 S.Ct. 2781, 61 LEd2d 560) (1979)).

(a) *Vehicular homicide*

Taylor was convicted of vehicular homicide in the first degree for causing Bascom's death by violating the DUI statute. *See* OCGA § 40-6-393(a) (defining first degree vehicular homicide as causing "the death of another person" by violating statutes including OCGA § 40-6-391, the DUI statute). Taylor argues that his conviction must be reversed because no witness actually saw him crash into Bascom or Bascom's car. We disagree.

Although there is no testimony from any eyewitness that he or she saw Taylor strike Bascom or his car, the circumstantial evidence was more than sufficient to authorize the conclusion that Taylor hit Bascom.[2] A conviction based upon

---

[2] At oral argument, there was much discussion about the State's representation that there was eyewitness testimony that Taylor struck Bascom or his car. The State filed a supplemental brief to support its assertion that direct testimony established this fact. However, the State failed to provide a record citation to support its argument that Frank Snelson, another driver on the highway, saw Taylor crash into Bascom. Our review of Snelson's testimony shows that he only saw Bascom initially hit the guardrail and, when he circled back to provide aid, the second accident involving Taylor had already occurred. Snelson specifically testified that he did not see the second accident occur. Thus, contrary to the State's argument, it is accurate to say that the State presented no evidence that anyone actually saw the second crash.

circumstantial evidence is authorized only when the proven facts are not only consistent with the hypothesis of guilt, but also exclude every other reasonable hypothesis save that of the guilt of the accused. *See* OCGA § 24-14-6. Whether a hypothesis is reasonable and whether every other hypothesis except the guilt of the accused has been excluded are generally questions for the jury to decide, because the jury is able to assess the evidence, observe the credibility of witnesses, and judge the reasonableness of hypotheses raised by the evidence. *See Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012); *Nangreave v. State*, 318 Ga. App. 437, 439 (1) (734 SE2d 203) (2012). We will not disturb a jury's findings unless they are unsupportable as a matter of law. *Nangreave*, 318 Ga. App. at 439 (1).

Here, it is undisputed that Taylor was in the driver's seat of a vehicle that Oglesby and Thompson saw on fire after hitting a concrete barrier. It is also undisputed that, more than three hours after the accident, Taylor had a BAC level of 0.196, more than twice the legal limit of 0.08, and his blood also tested positive for the presence of marijuana, cocaine, and Xanax. This evidence was sufficient to establish the predicate DUI offense. OCGA § 40-6-391(a)(5); *Griffin v. State*, 242 Ga. App. 878, 880 (1) (531 SE2d 752) (2000).

10

The evidence viewed in the light most favorable to the verdict also leads to the strong inference that Taylor, while driving under the influence, killed Bascom with his vehicle. Bascom was seen standing next to his vehicle immediately before Taylor's vehicle approached the area at a high rate of speed. Oglesby, who had been standing near Bascom, was able to get safely out of the way of Taylor's vehicle. Bascom, on the other hand, was immediately thereafter found dead in a nearby grassy field with massive blunt force trauma. There is no evidence that another car (or anything else) struck Bascom while he was alive with such force as to kill him. Although Taylor's accident reconstruction expert testified that it was "impossible" for Taylor to have crashed into Bascom or Bascom's car based on the type of damage to Taylor's car, it was for the jury, not this Court, to resolve questions of reasonableness and determine witness credibility. *Nangreave*, 318 Ga. App. at 439 (1). Given the evidence cited above, we cannot say that the jury's finding that Taylor struck Bascom was unsupportable as a matter of law, and therefore we affirm Taylor's conviction for vehicular homicide. *See Dobson v. State*, 222 Ga. App. 331, 332 (474 SE2d 630) (1996); *Mote v. State*, 212 Ga. App. 551, 552-53 (1) (442 SE2d 799) (1994).

(b) *Driving without a valid license and registration*

Taylor was charged with violating OCGA § 40-5-20 for driving without a license and OCGA § 40-2-20 for operating a vehicle without current registration. Because we reverse these convictions due to trial counsel's ineffectiveness, as further explained in Division 4(b)(i), we do not evaluate the sufficiency of the evidence.

3. Taylor argues that the trial court erred in admitting Officer Hewitt as an expert in accident reconstruction because he was not an engineer, had not been previously qualified as an expert, did not prepare any reports or maps in this case, and relied on evidence obtained from other officers.

Under the new Evidence Code, "[i]n criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-7-707. This provision is virtually identical to former OCGA § 24-9-67; the only difference is the word "proceedings," which replaced the word "cases." As a result, we may rely on Georgia decisions interpreting the former Code. OCGA § 24-1-2(e); *see also Bradshaw v. State*, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015) (giving new accomplice testimony provision same meaning as old one in the "light of the nearly identical language of the accomplice provisions in the old and new Evidence Codes").

Under the old Evidence Code, "[t]o qualify as an expert, generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status." *Billings v. State*, 293 Ga. 99, 104-05 (5) (745 SE2d 583) (2013) (citation and punctuation omitted). We review the trial court's ruling on this issue for an abuse of discretion. *Id.*

Here, Officer Hewitt testified that he was in command of the Traffic Fatality Investigations Unit, had received hundreds of hours of training that included on-scene accident investigations and accident reconstruction, and had investigated "[s]everal hundred, if not a thousand" vehicular accidents. Officer Hewitt further stated that he had applied his accident reconstruction training in subsequent accident investigations and had provided testimony on the issue about a dozen times. Based on this evidence, the trial court did not abuse its discretion in qualifying Officer Hewitt as an expert. *See Epps v. State*, 169 Ga. App. 157, 159-60 (4) (312 SE2d 146) (1983) (trial court did not abuse its discretion in admitting police officer as expert in accident reconstruction where officer had attended courses on the topic and had investigated over 200 automobile accidents). *Cf. Billings*, 293 Ga. at 105 (5) (had defense counsel

13

objected to witness's qualifications as an expert, trial court would have been within its discretion to overrule objection in the light of witness's certification and many years of investigating crime scenes).

4. Taylor argues that trial counsel rendered ineffective assistance of counsel in several respects. To prevail on his claim, Taylor "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (*citing Strickland v. Washington*, 466 U.S. 668 (104 S.Ct. 2052, 80 LEd2d 674) (1984)). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, we do not have to examine the other prong. *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004). "In reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but review a trial court's legal conclusions de novo." *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (citation omitted).

(a) Taylor argues that trial counsel was ineffective for withdrawing challenges to the admissibility of Taylor's statements to police and for failing to object to testimony about Taylor's statements.

"Whether to file pretrial motions and how to argue them are strategic decisions, and when reasonable in the context of the case, do not constitute error." *Stroud v. State*, 272 Ga. 76, 78 (4) (526 SE2d 344) (2000). To establish that trial counsel was ineffective for failing to move to suppress evidence, an appellant is required to make a "strong showing that the evidence would have been suppressed had a motion to suppress been filed." *Stanley v. State*, 283 Ga. 36, 39 (2) (a) (656 SE2d 806) (2008) (citation and punctuation omitted).

(i) *Withdrawing motion to suppress*

Prior to trial, trial counsel sought to exclude any statements made by Taylor at the hospital because he was allegedly in custody and was not read his *Miranda* rights. Trial counsel later withdrew his motion to suppress because he did not believe "the evidence support[ed] a finding that [Taylor] was in custody, as required by *Miranda*." Trial counsel's assessment was correct.

"The necessity of administering *Miranda* warnings exists only when the individual is interrogated while in custody." *Jenkins v. State*, 219 Ga. App. 339, 340

15

(1) (465 SE2d 296) (1995) (citation and punctuation omitted). *Miranda* warnings are required when a person "is (1) formally arrested or (2) restrained to the degree associated with a formal arrest." *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001) (citations omitted). *Miranda* warnings are not necessary unless a reasonable person in the suspect's situation would perceive that he was in custody. *Id.*

Taylor argues that he was effectively restrained because he was on a gurney in the trauma bay. However, Officer Hewitt testified that he had not placed Taylor under arrest at the time, and no one told Taylor that he was under arrest. Officer Hewitt stated that Taylor was free to go pending a medical release. The fact that Taylor was on a gurney in the trauma bay shows that he had not been released from the hospital, and that he was not isolated by the police for questioning. Further, Officer Hewitt testified that he went to interview Taylor at the hospital to obtain some information about how the accident occurred.

These circumstances are similar to those in *Robinson v. State*, 278 Ga. 299, 301-02 (2) (602 SE2d 574) (2004), where our Supreme Court held that the defendant was not in custody for purposes of *Miranda* where, among other things, the defendant had not been medically released by the hospital, the questioning related to how the defendant ended up at the hospital, and the police officers did not isolate the

16

defendant during questioning. Following the reasoning of *Robinson*, we similarly conclude that the evidence establishes that Taylor was not in custody and, as a result, *Miranda* warnings were not required. As a result, trial counsel was not ineffective for withdrawing the motion to suppress because the motion would not have been granted.

(ii) *Failure to move to suppress statements made at accident*

Although counsel made and then withdrew his motion to suppress statements made at the hospital, counsel made no motion to suppress statements made at the scene of the accident. Taylor complains that statements he made at the scene — that he was not driving the vehicle and that another friend had been driving — were not freely and voluntarily given because he had been involved in a major accident and was incoherent. However, the fact that Taylor may have been in pain or was intoxicated did not render his statements involuntary. *See Jones v. State*, 285 Ga. 328, 329 (2) (676 SE2d 225) (2009); *Myers v. State*, 275 Ga. 709, 713 (3) (572 SE2d 606) (2002). Taylor points to no other circumstances showing that, even if he was in pain and intoxicated, his statements "were not the product of rational intellect and free will." *Jones*, 285 Ga. at 330 (2). Because Taylor has not shown that the statements he made at the accident scene were inadmissible, trial counsel was not ineffective for failing to move to suppress this evidence.

17

(iii) *Failure to move to suppress statements made after Taylor's arrest*

Taylor argues that trial counsel was ineffective for failing to object to Officer Hewitt's testimony about statements Taylor made after his arrest and about his refusal to submit to a chemical testing of his blood because *Miranda* warnings had not been provided. We disagree.

Taylor's statements denying that he was driving the vehicle were not made in response any form of questioning or interrogation. The record shows that Taylor first denied driving the vehicle in response to being told he was under arrest, and he repeated the statement after the officers told him that no one else was in the vehicle at the time he was pulled from it. Because Taylor's voluntary and spontaneous statements were not made in response to an interrogation, custodial or otherwise, the failure to give *Miranda* warnings did not render his statements inadmissible. *See Tennyson v. State*, 282 Ga. 92, 93 (3) (646 SE2d 219) (2007); *Jenkins*, 219 Ga. App. at 340 (1).

*Miranda* warnings were also not a prerequisite to the admission of evidence that Taylor refused to submit to a chemical test. In *State v. Coe*, 243 Ga. App. 232, 234 (2) (533 SE2d 104) (2000), this Court ruled that "an arrestee is not, under Georgia constitutional or statutory law, entitled to *Miranda* warnings before deciding

18

whether to submit to the State's request for an additional test of breath, blood, or urine." (punctuation omitted). Taylor recognizes this precedent, but urges us to overrule it. We decline to do so, especially in the light of the express statutory authority providing that a defendant's refusal to submit to a chemical testing of his blood, breath, urine, or other bodily substance shall be admissible evidence at his trial. OCGA § 40-6-392(d). Because the complained-of evidence was admissible despite any lack of *Miranda* warnings, trial counsel was not ineffective for failing to object to Officer Hewitt's testimony.

(b) Taylor argues that trial counsel was ineffective in several respects when Officer Hewitt testified about securing a search warrant to obtain a blood sample from Taylor. Specifically, Taylor argues that trial counsel should have objected to the admission of the search warrant into evidence, to the reading of the search warrant affidavit, and to hearsay testimony regarding the status of Taylor's driver's license and registration.

The challenged testimony occurred when the State sought to admit into evidence the search warrant and supporting affidavit. Trial counsel initially stated that he had no objection, but the trial court reminded him that he had previously voiced an objection to the admissibility of the affidavit, trial counsel stated, "Yes, Your

19

Honor. I'm sorry. With apologies, I do object to admission of that[.]" Trial counsel did not specify the basis for his objection,[3] and the trial court overruled the objection. The State then questioned Officer Hewitt about whether the search warrant revealed any information about Taylor's driver's license. Officer Hewitt testified that Taylor had a Georgia driver's license, but he could not recall whether it was current. The State then attempted to refresh Officer Hewitt's memory as to the status of Taylor's license with a report prepared by another police officer, and trial counsel objected on foundation grounds. The trial court overruled trial counsel's objection, and after viewing the presented document, Officer Hewitt clarified that Taylor had a New York driver's license that he believed was suspended. Officer Hewitt then used that report again to refresh his recollection and testified that Taylor's vehicle had an expired registration tag. The State then asked Officer Hewitt to read section 5 of his affidavit, which included facts the officer provided to the magistrate judge. Trial counsel again objected on foundation grounds, but withdrew the objection when the court assured him that the search warrant and affidavit would not go out with the jury during its deliberations. Reading from the affidavit, Officer Hewitt testified:

---

[3] It appears that trial counsel's prior objection to the affidavit was based on the argument that it did not establish probable cause to believe Taylor was intoxicated.

20

On July 17, 2012, Joshua S. Taylor of [address omitted] was operating a 2008 Saturn on Interstate 85, southbound at the 17th Street ramp. That while in control of the vehicle, Taylor struck and killed a black male that is currently unidentified at the time of this application who had also been involved in a separate auto accident. While being interviewed at Grady Hospital, Taylor stated that he had gone out to party with friends after he got off work at 2130. Taylor stated that he had been drinking and stated – started drinking at 2330 hours. Taylor stated that he had at least 3-4 shots of hard liquor, 2-3 beers, and a lemon drop. Evidence also shows that Taylor was the driver, as evident by the seat belt abrasions that started at the left shoulder and proceeded down, across the chest, to the right waist area.

The State questioned Officer Hewitt about some of the errors contained in the affidavit, which are discussed above in Division 1, but no other portions of the search warrant or supporting application were read to the jury.

(i) Taylor argues that trial counsel was ineffective for failing to object to Officer Hewitt's testimony about the status of Taylor's driver's license and vehicle registration because it constituted hearsay and because the State was required to meet the procedural requirements of OCGA § 24-9-902 and § 24-9-920 to present proof of the traffic violations. We agree.

Officer Hewitt's testimony that Taylor's driver's license was suspended and that his vehicle registration was expired relied on his checks of a computer system or statements made by other police officers. When an officer testifies about the results of a computer check of a registration tag or driver's license, the testimony is hearsay. OCGA § 24-8-801(c) ("'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also Byrd v. State*, 325 Ga. App. 24, 26 (1) (752 SE2d 84) (2013) (testimony about results of computer check on vehicle tag was hearsay); *Nichols v. State*, 133 Ga. App. 717, 717 (1) (213 SE2d 20) (1975) (testimony of driver's license check was hearsay).

In order for hearsay to be admissible, it must fall within one of the statutory hearsay exceptions, and the moving party has the burden of establishing that one of the exceptions applies. *See Phillips v. State*, 275 Ga. 595, 598 (4) (571 SE2d 361) (2002). The State has not identified such an exception. The other police officer's report that Officer Hewitt relied upon does not qualify as a business record. *See generally* OCGA § 24-8-803 (providing for a "public records" exception to the hearsay rule, but excluding in subsection (8)(B), "against the accused in criminal

22

proceedings, matters observed by police officers and other law enforcement personnel in connection with an investigation[.]").

A witness's testimony about driving records may be admissible if the information is obtained from a terminal lawfully connected to the Georgia Crime Information Center. *See* OCGA § 24-9-924 (permitting the admission of information "obtained from any terminal lawfully connected to the Georgia Crime Information Center without the need for additional certification of such records."). However, the the State offered no such proof, and thus Officer Hewitt's testimony about Taylor's driving record was inadmissible. *See Byrd*, 325 Ga. App. at 26 (1) ("The proper method of offering proof on th[e] issue [of an expired tag] would have been through the introduction of a properly authenticated printout of the computer record rather than by the officer's testimony alone.") (citation and punctuation omitted).

Although the decision of whether to interpose certain objections is generally a matter of trial strategy and tactics, *see Abernathy v. State*, 299 Ga. App. 897, 903 (3) (a) (685 SE2d 734) (2009), trial counsel provided no reason for failing to object to Officer Hewitt's hearsay testimony about Taylor's license and vehicle registration. In assessing the objective reasonableness of a lawyer's performance, we are not limited to the subjective reasons offered by trial counsel for his conduct. *Hurt v.*

23

*State*, 298 Ga. 51, 57 (3) (b) (779 SE2d 313) (2015). Instead, we consider whether "a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely[;]" if the answer to that question is yes, then the "actual lawyer cannot be said to have performed in an objectively unreasonable way." *Id.* (citation omitted). In this case, we cannot identify any reason why a reasonable attorney would have decided not to object to the hearsay testimony that provided the only evidentiary basis for a conviction of the traffic offenses. As a result, trial counsel was deficient for failing to object to Officer Hewitt's hearsay testimony.

The prejudice from trial counsel's deficiency is clear. Officer Hewitt's hearsay testimony was the only evidence offered to prove the elements of the traffic offenses. Had this evidence been excluded, there would not have been sufficient evidence to convict Taylor of those offenses. *Cf. Williams v. State*, No. A15A1973, 2016 WL 1177089 at *6, 2016 Ga. App. LEXIS 201 (Ga. Ct. App. Mar. 28, 2016) (a police officer's conclusory trial testimony that "running" the defendant's license revealed that the defendant's driving "privilege in Georgia was not valid," was insufficient to support a conviction under OCGA § 40-5-20); *Christian v. State*, 329 Ga. App. 244, 249 (2) (764 SE2d 573) (2014) (inadmissible hearsay was the only evidence

24

establishing the driving offenses and was, therefore, insufficient to support convictions for those offenses). Thus, but for counsel's performance, more than a reasonable probability exists that the outcome of the trial would have been different, and this amounted to ineffective assistance of counsel. *See Hall v. Wheeling*, 282 Ga. 86, 87 (1) (646 SE2d 236) (2007). Accordingly, we reverse the trial court's denial of Taylor's motion for a new trial with respect to the two misdemeanor traffic violations.

(ii) Taylor next argues that trial counsel was ineffective for failing to object to the admission of the search warrant into evidence because it bolstered Officer Hewitt's testimony, the reading of the warrant affidavit went to the ultimate issue, and the testimony violated his rights to confrontation. Because we have already determined that Taylor deserves a new trial with respect to the misdemeanor traffic offenses, any remaining discussion of Taylor's ineffectiveness claims is limited to the vehicular homicide conviction.

Regardless of whether trial counsel was deficient for failing to object to the admission and publication of the search warrant and affidavit, Taylor must also show that counsel's performance so prejudiced him that there is a reasonable probability the outcome of trial would have been different but for counsel's error. Taylor has not met this burden.

Taylor concedes that Officer Hewitt's testimony about the contents of the warrant and affidavit was consistent with the officer's prior testimony. Officer Hewitt's testimony about the warrant was not only consistent with his prior testimony, but was largely cumulative of other trial testimony that Taylor was the driver of a vehicle that was involved in a fatal car accident and cumulative of Officer Hewitt's testimony that Taylor admitted to drinking the night of the car accident.

Taylor argues that the reading of the warrant affidavit improperly vouched for Officer Hewitt's prior testimony. However, Officer Hewitt admitted that there were several false statements in the warrant affidavit. Thus, rather than bolstering his testimony, the warrant affidavit presented the jury with a possible basis for doubting Officer Hewitt's credibility.

Taylor also argues that Officer Hewitt's reading of the affidavit included an expression on ultimate issues that should have reserved for the jury — whether he drove a vehicle that struck and killed Bascom. But he cannot show prejudice in the light of the strong evidence showing that he drove a vehicle that struck and killed Bascom. The evidence from eyewitnesses showed that Bascom was alive just before another vehicle approached him at a high rate of speed, that vehicle hit a barrier and

caught fire, Taylor was pulled from the driver's seat of that burning vehicle, and Bascom was dead when he was found soon after the accident.

Because Officer Hewitt's testimony about the search warrant was cumulative of other evidence and Taylor has not otherwise shown a reasonable probability that the outcome of the trial would have been different had the testimony been excluded, trial counsel was not ineffective. *See Williams v. State*, 292 Ga. 844, 848 (3) (a) (742 SE2d 445) (2013) (no prejudice from counsel's failure to object to certain testimony that was cumulative of other testimony to a large extent); *Columbus v. State*, 270 Ga. 658, 664 (2) (g) (513 SE2d 498) (1999) (trial counsel not ineffective because there was no reasonable probability that the result of the trial would have been different had the ultimate issue testimony been excluded).

(c) Taylor also argues that trial counsel was ineffective for failing to object to Officer Hewitt's expert opinion testimony, because Officer Hewitt's opinion was not based on personal knowledge and was based on an inadequate investigation. Although Taylor asked trial counsel at the motion for new trial hearing about the fact that Officer Hewitt's expert opinion was based on the reports of other police officers, Taylor did not specifically ask trial counsel about the failure to object to the expert opinion testimony on this or any other ground. "In the absence of testimony to the

27

contrary, counsel's actions are presumed strategic. And declining to object to testimony can be considered reasonable trial strategy." *Brown v. State*, 280 Ga. App. 884, 889 (5) (635 SE2d 240) (2006) (footnotes omitted). Because Taylor did not ask trial counsel about his failure to object to Officer Hewitt's expert testimony, he has failed to establish that trial counsel's failure was anything other than trial tactics. Moreover, Taylor's challenges to Officer Hewitt's expert opinion based on a lack of personal knowledge and insufficient investigation go to the weight and credibility, not admissibility, of the testimony. *See Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (632 SE2d 135) (2006); *Cox v. Allen*, 256 Ga. App. 53, 57 (567 SE2d 363) (2002). Counsel's failure to make a meritless objection cannot constitute evidence of ineffective assistance. *Porter v. State*, 292 Ga. 292, 294 (3) (a) (736 SE2d 409) (2013). Thus, Taylor's infectiveness claim fails.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur*.