S12A1601. CASTILLO-SOLIS v. THE STATE.
(740 SE2d 583)

NAHMIAS, Justice.

This Court granted Appellant Fernando Castillo-Solis's application for interlocutory appeal challenging the trial court's ruling that OCGA § 40-5-20 (a), which prohibits driving in Georgia without a valid driver's license, is constitutional as applied to him. Many of Appellant's constitutional challenges are premised on his incorrect interpretation of OCGA § 40-5-20 (a) as including a "retroactive amnesty" provision; as properly construed, the statute does not allow a person who has been cited for driving without a valid license to avoid guilt by later obtaining a Georgia driver's license. We also

conclude that OCGA § 40-5-20 (a) does not violate due process or equal protection as applied to Appellant, that the statute does not impair his right to defend himself in court, and that he has failed to show that the Georgia statute is preempted by federal law. Accordingly, we affirm.

1. On January 14, 2010, a Gwinnett County police officer stopped the van that Appellant was driving after running the license plate number and determining that the vehicle's registration had been suspended.[1] Appellant was unable to produce a valid driver's license, so the officer cited him for violating OCGA § 40-5-20 (a).

Appellant filed a motion to quash the citation, claiming that OCGA § 40-5-20 (a) is unconstitutional as applied to him on several grounds. At the hearing on the motion, the parties stipulated that another statute, OCGA § 40-5-21.1, prevented Appellant from obtaining even a temporary Georgia driver's license because he is an "undocumented Mexican citizen" and that Appellant had been living in Georgia for at least ten years when the officer cited him. The trial court denied Appellant's motion but issued a certificate of immediate review. We then granted Appellant's application for interlocutory appeal, and he filed a timely notice of appeal.[2]

2. Appellant asserts that OCGA § 40-5-20 (a) allows a Georgia citizen and resident who has been cited for driving without a valid license to avoid guilt by obtaining a Georgia driver's license after being cited but prior to the trial of the case — something that Appellant cannot do because he is admittedly an illegal immigrant and thus cannot obtain even a temporary Georgia driver's license. Appellant then argues that this "retroactive amnesty" provision constitutes an irrevocable grant of special privileges or immunities and makes OCGA § 40-5-20 (a) a retroactive or ex post facto law.[3] The State responds that Appellant has misconstrued the statute, noting that the Court of Appeals has previously rejected the interpretation of OCGA § 40-5-20 (a) that Appellant advances. See *Colotl v. State*, 313 Ga. App. 42, 44 (720 SE2d 210) (2011) (holding that OCGA

---

[1] The officer cited Appellant for violating OCGA § 40-2-20 due to the suspended registration, but that citation is not at issue.

[2] We note that the trial court record, which is less than 100 pages long, was not received at this Court until June 12, 2012, more than 18 months after the notice of appeal was filed on December 1, 2010.

[3] See U. S. Const., Art. I, Sec. 10, Cl. 1 ("No State shall . . . pass any . . . ex post facto Law . . . ."), Amend. XIV, Sec. 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."); Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No . . . ex post facto law, retroactive law, or laws . . . making irrevocable grant of special privileges or immunities shall be passed.").

§ 40-5-20 (a)'s "safe-harbor provision" requires a defendant "to produce a driver's license that was valid at the time the vehicle was being driven"). We agree with the State.

OCGA § 40-5-20 (a) provides in full as follows, with the sentences numbered for later reference:

> ■ No person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license under this chapter for the type or class of vehicle being driven. [2] Any person who is a resident of this state for 30 days shall obtain a Georgia driver's license before operating a motor vehicle in this state. [3] Any violation of this subsection shall be punished as provided in Code Section 40-5-121, except the violation of driving with an expired license, or a violation of Code Section 40-5-29 [failure to carry driver's license when operating a motor vehicle] or if such person produces in court a valid driver's license issued by this state to such person, he or she shall not be guilty of such offenses. [4] Any court having jurisdiction over traffic offenses in this state shall report to the department the name and other identifying information of any individual convicted of driving without a license.

Reading this provision in conjunction with the other statutes it references, we understand the somewhat complicated statutory scheme to work as follows. See *Horn v. Shepherd*, 292 Ga. 14, 20-21 (732 SE2d 427) (2012) (" ' "(S)tatutes 'in pari materia,' i.e., statutes relating to the same subject matter, must be construed together." ' " (citations omitted)). The first sentence of OCGA § 40-5-20 (a) prohibits any person from driving in Georgia without having a valid driver's license for the vehicle being driven, unless he comes within one of the 13 exempt categories set forth in OCGA § 40-5-21.[4] The second sentence

---

[4] OCGA § 40-5-21 exempts 13 categories of drivers from the licensing requirement, including certain federal government employees, nonresident members of the United States armed forces and reserves, inmates and inpatients, temporary migrant farm workers, nonresident students, and other drivers with a temporary or limited connection to Georgia or in situations not involving regular use of the roads. In particular, OCGA § 40-5-21 (a) (2) exempts any nonresident of Georgia who could receive a Georgia driver's license if he or she were a Georgia resident and who "has in his or her immediate possession a valid driver's license issued to him or her in his or her home state or country" and, if the foreign license is in a language other than English, "also has in his or her immediate possession a valid international driving permit." Appellant does not claim that he has a valid license from any state or country or that he was otherwise exempt from the licensing requirement when he was cited.

of OCGA § 40-5-20 (a) then requires persons who become "residents" of Georgia, and thus presumably will be driving on this state's roads on a regular and ongoing basis, to obtain a *Georgia* driver's license after a 30-day grace period.[5]

The third sentence provides that persons who violate the prohibitions set forth in the first two sentences are subject to enhanced punishment (and even greater punishment for subsequent violations) under OCGA § 40-5-121, but with three exceptions.[6] First, a violation resulting from driving with a once-valid but now-expired license is not subject to the enhanced punishment.

Second, conduct violating OCGA § 40-5-29 is not subject to the enhanced punishment. Subsection (a) of OCGA § 40-5-29 requires

---

[5] Although Appellant stipulated that he has been living in this state for over ten years, he is not a Georgia "resident" for purposes of the drivers' licenses chapter of the Georgia Code. See OCGA §§ 40-1-1 (35) (" 'Nonresident' means every person who is not a resident of this state."), 40-5-1 (15) ("[N]o person shall be considered a resident for purposes of this chapter unless such person is either a United States citizen or an alien with legal authorization . . . ."). See also *Diaz v. State*, 245 Ga. App. 380, 383 (537 SE2d 784) (2000) (holding that an illegal immigrant's status as a nonresident does not create an exemption allowing him to drive without a valid Georgia license); *John Doe No. 1 v. Ga. Dept. of Public Safety*, 147 FSupp.2d 1369, 1372-1376 (N.D. Ga. 2001) (upholding OCGA § 40-5-1 (15) against constitutional challenges).

[6] OCGA § 40-5-120 establishes that the default penalty for most violations of the drivers' licenses chapter of the Georgia Code is a misdemeanor. See OCGA § 40-5-120 (4) ("It is a misdemeanor for any person to: . . . [d]o any act forbidden or fail to perform any act required by this chapter for which a criminal sanction is not provided elsewhere in this chapter . . . ."). By contrast, OCGA § 40-5-121 (a) provides:

> Except when a license has been revoked under Code Section 40-5-58 as a habitual violator, any person who drives a motor vehicle on any public highway of this state without being licensed as required by subsection (a) of Code Section 40-5-20 . . . shall be guilty of a misdemeanor for a first conviction thereof and, upon a first conviction thereof or plea of nolo contendere within five years, . . . shall be fingerprinted and shall be punished by imprisonment for not less than two days nor more than 12 months, and there may be imposed in addition thereto a fine of not less than $500.00 nor more than $1,000.00. Such fingerprints, taken upon conviction, shall be forwarded to the Georgia Crime Information Center where an identification number shall be assigned to the individual for the purpose of tracking any future violations by the same offender. For the second and third conviction within five years, as measured from the dates of previous arrests for which convictions were obtained or pleas of nolo contendere were accepted to the date of the current arrest for which a conviction is obtained or a plea of nolo contendere is accepted, such person shall be guilty of a high and aggravated misdemeanor and shall be punished by imprisonment for not less than ten days nor more than 12 months, and there may be imposed in addition thereto a fine of not less than $1,000.00 nor more than $2,500.00. For the fourth or subsequent conviction within five years, as measured from the dates of previous arrests for which convictions were obtained or pleas of nolo contendere were accepted to the date of the current arrest for which a conviction is obtained or a plea of nolo contendere is accepted, such person shall be guilty of a felony and shall be punished by imprisonment for not less than one year nor more than five years, and there may be imposed in addition thereto a fine of not less than $2,500.00 nor more than $5,000.00.

every "licensee" to keep his driver's license "in his immediate possession at all times when operating a motor vehicle," and subsection (b) requires a licensee to "display his license upon the demand of a law enforcement officer." Refusal to comply with an officer's demand not only violates OCGA § 40-5-29 (b), but also shall "give rise to a presumption of a violation of [OCGA § 40-5-29 (a)] and of Code Section 40-5-20." A violation of OCGA § 40-5-29 (a) is punished as a misdemeanor, see OCGA § 40-5-120 (4) (default penalty provision for traffic offenses), *unless* the cited person "produces in court a license theretofore issued to him and valid at the time of his arrest," in which case the penalty is a fine of no more than $10, see OCGA § 40-5-29 (c).

The final and interrelated exemption from the enhanced punishment for OCGA § 40-5-20 (a) violations is what the Court of Appeals called the "safe-harbor provision" at the end of the third sentence. *Colotl*, 313 Ga. App. at 44. This provision says that "if such person produces in court a valid driver's license issued by this state to such person, he or she shall not be guilty of such [OCGA § 40-5-20 (a)] offenses." Thus, while listed as an exception to enhanced punishment, by its terms this provision allows a driver who is able to produce a valid Georgia driver's license in court not merely to have his punishment reduced, but to be found not guilty of the OCGA § 40-5-20 (a) violation, thereby receiving no punishment at all under that statute (although if he was driving without his license in his immediate possession, he may still be found guilty of violating OCGA § 40-5-29 (a) and punished accordingly).[7] The safe harbor does *not* allow a person cited for driving without a valid Georgia driver's license to escape guilt by obtaining such a license after the fact and presenting it at trial. Instead, the safe harbor simply allows a person who is validly licensed to drive by this state to bring that license to court as evidence to readily and conclusively demonstrate that he is not, in fact, guilty of violating OCGA § 40-5-20 (a), thereby rebutting the statutory presumption of such a violation created by OCGA § 40-5-29 (b) due to his failure to have the license in the vehicle when demanded by the officer.[8]

---

[7] By comparison, if a person drives without having a driver's license of any sort, valid or invalid, he is not a "licensee" and does not come within the scope of OCGA § 40-5-29. By definition, such a driver violates OCGA § 40-5-20 (a) and cannot come within its safe-harbor provision, because he does not have a valid driver's license and cannot produce a valid Georgia license in court.

[8] A driver may also defend a citation for violating OCGA § 40-5-20 (a) by offering other evidence, tangible or testimonial, that he had a valid license, from Georgia or another jurisdiction, at the time he was stopped, to rebut the presumption created by OCGA § 40-5-29 (b) and prevent the State from proving the no-valid-license element of the violation. That is because, as a matter of constitutional due process, statutory presumptions cannot be conclusive

Appellant's contention that a driver may avoid punishment for a violation of OCGA § 40-5-20 (a) by obtaining a Georgia driver's license *after* being cited is contrary to the statutory text, which states the requirements imposed on drivers in the present tense:

No person, except those expressly exempted in this chapter, *shall drive* any motor vehicle upon a highway in this state unless such person *has a valid driver's license* under this chapter for the type or class of vehicle *being driven.* Any person who is a resident of this state for 30 days *shall obtain* a Georgia driver's license *before operating a motor vehicle* in this state. . . .

Thus, as our Court of Appeals has held, the safe-harbor provision requires the production in court of a Georgia driver's license that was valid at the time the vehicle was being driven. See *Colotl,* 313 Ga. App. at 44-45. "Nothing in the statutory language indicates that a subsequently obtained license operates retroactively when presented to the trial court," and like the defendant in *Colotl,* Appellant "has cited no case law supporting such a proposition." Id. at 45.

Appellant identifies several constitutional concerns that might arise under his interpretation of the statute. For example, a statute that says that people commit a crime by engaging in particular conduct but allows certain people to escape guilt by taking action after the fact would be unusual and could raise due process concerns.[9] Thus, even if Appellant's reading of OCGA § 40-5-20 (a) were plausible (and it is not), the canon of constitutional avoidance would weigh against our adopting that interpretation. See *Clark v. Martinez,* 543 U. S. 371, 381 (125 SC 716, 160 LE2d 734) (2005) (explaining that the canon of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts"); *Haley v. State,* 289 Ga. 515, 521-522 (712 SE2d 838) (2011).

---

on the factfinder or shift the burden of proof to the defendant in criminal cases. See *Sandstrom v. Montana,* 442 U. S. 510, 521-524 (99 SC 2450, 61 LE2d 39) (1979); *Napier v. State,* 276 Ga. 769, 771 (583 SE2d 825) (2003).

[9] By contrast, it is not unusual for the *punishment* imposed for a crime to reflect the offender's subsequent conduct; indeed, that is the basis for paroling sentences. See also *Pepper v. United States,* ___ U. S. ___, ___ (131 SC 1229, 1236, 179 LE2d 196) (2011) (holding that "when a defendant's sentence has been set aside on appeal, a [trial] court at resentencing may consider evidence of the defendant's postsentencing rehabilitation"). Nor are amnesty programs and pardons unusual, but they are exercises of prosecutorial discretion and executive grace, not legislative lawmaking.

In sum, it is generally illegal to drive in Georgia without having been issued a valid driver's license, and it is generally illegal to drive in Georgia without having been issued a valid Georgia driver's license where the driver has been a Georgia resident for at least 30 days. Licensees must keep their drivers' licenses in their immediate possession when driving, and the failure to do so gives rise to a statutory presumption that the driver is driving without being licensed. However, production in court of a Georgia driver's license that was valid at the time of the citation rebuts this presumption and precludes a conviction for driving without a valid license, although the driver may still be subject to a small fine for not having the license in his immediate possession when stopped. Understood this way, Appellant's constitutional complaints based on "retroactive amnesty" lose their premise.

3. Appellant is ineligible for a Georgia driver's license because he is an illegal immigrant, and he argues that his inability to have taken advantage of OCGA § 40-5-20 (a)'s safe-harbor provision for this reason violates due process and equal protection, urging us to apply heightened scrutiny to those claims. However, to the consternation of generations of American teenagers, there is no fundamental right to a driver's license. See *Quiller v. Bowman*, 262 Ga. 769, 771 (425 SE2d 641) (1993) (holding that "the right to drive is not a fundamental right"). And illegal immigrants have never been recognized as a suspect class in constitutional analysis. See *Plyler v. Doe*, 457 U. S. 202, 223 (102 SC 2382, 72 LE2d 786) (1982) (holding that "[u]ndocumented aliens cannot be treated as a suspect class").[10] Accordingly, our review is limited to determining whether OCGA § 40-5-20 (a) and the classification employed by its safe-harbor provision bear a rational relationship to a legitimate government interest. See *Favorito v. Handel*, 285 Ga. 795, 796 (684 SE2d 257) (2009) ("Unless governmental action infringes upon a fundamental right or the complaining party is a member of a suspect class, a substantive due process or equal protection challenge is examined under the 'rational basis' test."); *Daniel v. Amicalola Electric Membership Corp.*, 289 Ga. 437, 441 (711 SE2d 709) (2011) ("The rational basis test requires only that the legislative classification bear ' "a rational relationship to a legitimate end of government not prohibited by the constitution." ' " (citations omitted)).

---

[10] See also *John Doe No. 1*, 147 FSupp.2d at 1373 ("The Plaintiff's argument begins with the remarkable assumption that an illegal alien has the same fundamental rights as a citizen or lawful resident alien. Plaintiff is unable to cite any case law in support of this assumption. It would be curious indeed if the law gave illegal aliens a fundamental right to travel about this country when their mere presence here is a violation of federal law.").

It is indisputable that requiring drivers to have a properly issued license to drive on Georgia's roads rationally advances the State's legitimate interest in protecting the safety of the traveling public. See *Nelson v. State*, 87 Ga. App. 644, 647 (75 SE2d 39) (1953) (explaining that the purpose of the licensing requirement is to prevent the use of the roads by inexperienced or incompetent drivers and observing that "[o]ne of the most serious hazards of modern everyday life is the injury and damage, daily occurring in this State and elsewhere, resulting from the careless, incompetent, and unlawful operation of automobiles and other motor vehicles along the roads and highways"). Requiring licensees to keep their licenses in their immediate possession when driving, see OCGA § 40-5-29 (a), and creating a presumption that drivers who refuse to present their licenses on demand of a law enforcement officer do not have a valid license, see OCGA § 40-5-29 (b), are rational means of enforcing the licensing requirement.

Limiting OCGA § 40-5-20 (a)'s safe harbor to the production at trial of a Georgia driver's license is also a rational part of the enforcement scheme, allowing the presumption created by a violation of OCGA § 40-5-29 (b) to be automatically rebutted only where the evidence that the driver in fact had a valid license when cited is most indisputable and readily evaluated by the factfinder. The safe-harbor provision does not allow a driver simply to assert in testimony that he had a valid license at the time he was cited; instead, the license itself must be "produce[d] in court." And it was reasonable for the legislature to presume that Georgia courts are more familiar with Georgia drivers' licenses and can more readily assess whether the document the defendant produces in court is authentic and was in fact valid on the date of the citation than when the court has to decipher the authenticity and effective dates of myriad licensing documents issued by other states and countries. In other words, the safe-harbor provision merely establishes a straightforward way for Georgia residents with valid Georgia drivers' licenses not in their immediate possession when stopped by the police to rebut the OCGA § 40-5-29 (b) presumption and defeat OCGA § 40-5-20 (a) charges, while still allowing both Georgians and nonresidents to defend against such charges in any other way, which would include the production in court of a valid driver's license by a nonresident, see footnote 8 above. Accordingly, OCGA § 40-5-20 (a) and its safe-harbor provision do not violate due process or equal protection as applied to Appellant.

4. Appellant also maintains that OCGA § 40-5-20 (a)'s safe-harbor provision deprives him of his constitutional right to defend himself in court. Article I, Section I, Paragraph XII of the 1983 Georgia Constitution says, "No person shall be deprived of the right

to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Nothing in OCGA § 40-5-20 (a) prevents Appellant from appearing in court and defending himself pro se or with the assistance of counsel. See *Smith v. Baptiste*, 287 Ga. 23, 24 (694 SE2d 83) (2010) ("[T]his Court has held that Art. I, Sec. I, Par. XII . . . was intended to provide only a right of choice between self-representation and representation by counsel."). Thus, Appellant's argument has no merit.

5. Finally, Appellant contends that OCGA § 40-5-20 (a) represents an attempt by Georgia to implement its own immigration policy and therefore is preempted by federal law. Georgia law is preempted only

> (1) where there is direct conflict between state and federal regulation; (2) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress; or (3) where Congress has occupied the field in a given area so as to oust all state regulation.

*Hernandez v. State*, 281 Ga. 559, 561 (639 SE2d 473) (2007). Accord *Arizona v. United States*, ___ U. S. ___, ___ (132 SC 2492, 2500-2501, 183 LE2d 351) (2012). The Supreme Court of the United States has recently reiterated that federal immigration laws do not preempt all state laws relating to illegal immigrants and indeed that "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" Id. at ___, 132 SC at 2501 (citation omitted).

OCGA § 40-5-20 (a) constitutes an exercise of Georgia's "authority under its police powers to enact reasonable laws regulating the use and operation of motor vehicles upon the public highways." *Dennis v. State*, 226 Ga. 341, 342 (175 SE2d 17) (1970). Thus, to prevail on his preemption claim, Appellant was required to show the "clear and manifest purpose of Congress" to preempt OCGA § 40-5-20 (a), yet he has cited not a single federal statute or regulation in support of his claim. Accordingly, we reject Appellant's assertion that federal law somehow preempts OCGA § 40-5-20 (a).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 25, 2013 —
RECONSIDERATION DENIED APRIL 4, 2013.

*Corso, Kennedy & Campbell, Arturo Corso, Norman H. Cuadra, Gregory E. Vanison*, for appellant.

*Rosanna M. Szabo, Solicitor-General, Karin B. Sullivan, James M. Grant, Assistant Solicitors-General*, for appellee.