302 Ga. 444
FINAL COPY

S17A1125. RES-GA McDONOUGH, LLC v. TAYLOR ENGLISH DUMA LLP et al.

BOGGS, Justice.

Plaintiff RES-GA McDonough, LLC ("RES-GA") brought this legal malpractice action against Taylor English Duma LLP and two of its attorneys (collectively, "Taylor English"). RES-GA contends that Taylor English failed to timely assert a Uniform Fraudulent Transfers Act claim, thus damaging RES-GA's ability to satisfy its judgment against a debtor. Taylor English moved to dismiss the complaint, contending that RES-GA had failed to allege a viable underlying cause of action to support its malpractice claim. The trial court agreed and granted Taylor English's motion to dismiss. From this order, RES-GA appeals.[1] For the reasons stated below, we affirm.

---

[1] This appeal initially was filed with the Court of Appeals of Georgia, which transferred it to this Court because RES-GA asserts that OCGA § 44-12-24 is preempted by federal law. "The preemption doctrine is a product of the Supremacy Clause, see U. S. Const., Art. VI, Cl. 2, which invalidates state laws that interfere with, or are contrary to, federal law." (Citations and punctuation omitted.) Norfolk S. Ry. v. Zeagler, 293 Ga. 582, 598 (3) (a) (748 SE2d 846) (2013). The preemption argument invokes this Court's

The facts, as alleged in RES-GA's amended complaint, show that in November 2006, Greenleaf Developers and Construction, Inc. executed a promissory note and deed to secure debt in favor of FirstCity Bank. In connection with that loan, Michael Langino, the personal guarantor, executed a total of three personal guaranties for the repayment of the note. In 2009, FirstCity Bank was declared insolvent, and the FDIC was appointed as receiver. In February 2010, the FDIC assigned the Greenleaf note, deed to secure debt, and guaranties to Multibank 2009-1 RES-ADC Venture, LLC ("Multibank").

In April 2010, Taylor English began representing Multibank in collection efforts on the note against Greenleaf and Langino. In September 2010, Taylor English filed suit on behalf of Multibank against Langino on the guaranties ("the underlying action"). On September 13, 2010, Multibank assigned the note, guaranties and security deed to RES-GA. After a stay pursuant to Langino's bankruptcy petition was lifted, in June 2012, RES-GA was substituted as the plaintiff in the underlying action.

RES-GA alleges that "[a]round the time that [RES-GA] was substituted

_____

constitutional question jurisdiction. See Ga. Const. of 1983, Art. VI Sec. VI, Par. II (1); Babies Right Start, Inc. v. Ga. Dept. of Public Health, 293 Ga. 553, 554 (1) (748 SE2d 404) (2013); Ward v. McFall, 277 Ga. 649, 651 (1) (593 SE2d 340) (2004).

as the plaintiff in the [u]nderlying [a]ction," RES-GA informed Taylor English that in October 2008, Langino had transferred real property to his wife, Debbie Langino, in an apparent fraudulent transfer. Taylor English agreed to pursue setting aside that transfer under the former Georgia Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq. ("UFTA").[2] On August 10, 2012, the complaint in the underlying action was amended to assert UFTA claims against Michael Langino and to seek to set aside the transfer. In January 2013, Taylor English recorded a notice of lis pendens regarding the UFTA claims, and also filed a motion to add Debbie Langino as a defendant in the underlying action. On February 21, 2013, however, while the motion remained pending, Debbie Langino sold the property to a third party.[3] The trial court refused to add the third party as a defendant in the underlying action, finding that he was a bona fide purchaser who took without notice of the UFTA claims against Debbie Langino. On May 24, 2013, RES-GA obtained a judgment against Michael

[2] The Uniform Fraudulent Transfers Act was superseded by Ga. L. 2015, p. 996, effective July 1, 2015, and is now known as the Uniform Voidable Transactions Act ("UVTA").

[3] Debbie Langino was added to the underlying action as a party defendant on March 7, 2013.

Langino.

In 2015, RES-GA filed this action asserting claims of legal malpractice, breach of fiduciary duty, attorney fees, and punitive damages. It contends that because of Taylor English's failure to assert an UFTA claim against Debbie Langino in a timely manner, it lost the opportunity to execute its judgment against the transferred property. The parties filed numerous additional pleadings. Taylor English moved to dismiss the complaint; RES-GA responded and filed a supplementary response and amended its complaint; Taylor English filed an additional brief in support of its motion to dismiss and a motion for judgment on the pleadings, and RES-GA filed a motion to strike. After oral argument, the trial court granted the motion to dismiss on the basis that RES-GA lacked standing to pursue the UFTA claim. It also denied the motion to strike and the motion for judgment on the pleadings as moot. This appeal followed.

> We begin with the well-settled standard that a motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant

4

of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo.

(Citations and punctuation omitted.) Abramyan v. State of Ga., 301 Ga. 308, 309-310 (800 SE2d 366) (2017). We therefore look at the elements of RES-GA's legal malpractice claim in light of the underlying UFTA claims, in order to determine whether the trial court erred in dismissing the action.

1. "In a legal malpractice action, the plaintiff must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff." (Citations and punctuation omitted.) Leibel v. Johnson, 291 Ga. 180, 181 (728 SE2d 554) (2012). And "[i]n order to establish the final element, the plaintiff must show that, but for the attorney's negligence in the underlying case, the plaintiff would have prevailed." (Citations and punctuation omitted.) Id. at 182. The validity of RES-GA's legal malpractice claim therefore turns upon the merits of the underlying UFTA claim, which RES-GA contends that Taylor English did not timely

5

pursue.

At the time relevant to this action, former OCGA § 18-2-74 (a) provided

in part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Such a transfer could be avoided, or other remedies pursued, if the transferee did

not take the property in good faith and for a reasonably equivalent value. See

former OCGA §§ 18-2-77, 18-2-78.

However, the provisions applicable here defined a "creditor" only as "a

person who has a claim," see former OCGA § 18-2-71 (4), and "claim" as "a

right to payment, whether or not the right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured."[4] Former OCGA § 18-2-71 (3). And, as the

---

[4] Those definitions now provide that "'Creditor' means a person who has a claim, *regardless of when the person acquired the claim, together with any successors or assigns*," (emphasis supplied) OCGA § 18-2-71 (4), and that "'Claim,' *except for claim for relief*, means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (Emphasis supplied.) OCGA § 18-2-71 (3).

trial court correctly noted, we must also consider the separate nonassignment provision of OCGA § 44-12-24 (What rights of action may and may not be assigned):

> Except for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned.

Our Court of Appeals recently considered this Code section and its effect on a claim under UFTA in RES-GA Hightower, LLC v. Golshani, 334 Ga. App. 176 (778 SE2d 805) (2015). In a remarkably similar fact situation, Golshani personally guaranteed a note for a limited liability company and later defaulted. When the lender became insolvent, the FDIC, as receiver for the bank, assigned its interest in the debt to Multibank 2009-1 RES-ADC Venture, LLC, which in turn assigned its interest to RES-GA Hightower, LLC. Before that assignment occurred, Golshani had conveyed real property to his relatives in apparently fraudulent transfers. RES-GA filed suit seeking to set aside the conveyances under UFTA, and the trial court granted summary judgment on the basis that RES-GA lacked standing due to the nonassignment provisions of OCGA § 44-12-24. Id. at 177-178.

7

The Court of Appeals affirmed, relying upon the nonassignment statute and this Court's decision in Security Feed & Seed Co. of Thomasville, Inc. v. NeSmith, 213 Ga. 783 (102 SE2d 37) (1958), to hold that Multibank's claim was a "right of action . . . arising from fraud" and thus not assignable. 334 Ga. App. at 178-179 (1) (a). While NeSmith predated the enactment of UFTA, the Court of Appeals concluded that NeSmith had not been superseded by UFTA because the plain language of UFTA evinced no intent to "displace[ ] NeSmith's construction of the nonassignment statute, which fraud provisions have not been amended in any material way. [Cits.]" Id. at 179-180 (1) (a). Finally, the Court of Appeals noted that when the General Assembly replaced UFTA in 2015, it for the first time expressly allowed subsequent assignees to pursue fraudulent transfer claims under UVTA, thus presumptively indicating a change in the existing law. Id. at 181-182 (1) (b). The court therefore concluded that RES-GA lacked standing under UFTA to pursue the fraudulent transfer claim, and affirmed the trial court's grant of summary judgment. The Court of Appeals has relied upon the nonassignment statute and NeSmith in subsequent decisions. See Callaway Blue Springs, LLLP v. West Basin Capital, LLC, 341 Ga. App. 535 (801 SE2d 325) (2017); Merrill Ranch Props., LLC v. Austell, 336 Ga. App.

8

722, 732 (3) (784 SE2d 125) (2016).

We agree with the reasoning of the Court of Appeals in Golshani, Callaway, and Merrill, that our decision in NeSmith correctly stated the law until it was changed by the enactment of UVTA, which expressly states that it does "[n]ot apply to a transfer made or obligation incurred before July 1, 2015" or "to a right of action that has accrued before July 1, 2015." Ga. L. 2015, pp. 996, 1029.[5] RES-GA therefore had no standing to pursue a fraudulent transfer claim, and accordingly cannot demonstrate that "but for the attorney's negligence in the underlying case, [it] would have prevailed." (Citation and punctuation omitted.) Leibel, supra, 291 Ga. at 182.[6]

2. RES-GA argues that OCGA § 44-12-24 conflicts with the Uniform Commercial Code because the note and guaranties were negotiable instruments.

---

[5] RES-GA's argument that it should not be bound by Golshani because that decision *changed* the applicable law is therefore without merit.

[6] While acknowledging that "the trial court did not explicitly state it was using that analysis," RES-GA argues that the trial court improperly evaluated its legal malpractice claim by considering evidence and "reached a fact-based conclusion" inappropriate for a motion to dismiss. RES-GA also argues that dismissal was inappropriate because standing was never challenged in the underlying action, and whether a challenge would have been asserted and would have been successful, was a question of fact. But in the absence of standing, as a matter of law RES-GA could not have prevailed in the underlying action. Consequently, RES-GA cannot show the third element of its claim for legal malpractice under any state of provable facts asserted in support of its allegations.

9

Therefore, RES-GA contends, its rights under the UCC, liberally construed as provided in OCGA § 11-1-103, preempt the nonassignment statute. RES-GA's underlying claim, however, was not made upon the note and guaranties, but pursuant to UFTA as a petition to set aside a fraudulent transaction. UFTA and the UCC contain identical language expressing the General Assembly's intent to retain "the principles of law and equity," including those pertaining to fraud, "[u]nless displaced by the provisions of this article." See former OCGA § 18-2-80 (a); OCGA § 11-1-103 (b). Just as the plain language of UFTA shows no "clear indication in its language that displaces NeSmith's construction of the nonassignment statute, which fraud provisions have not been amended in any material way," Golshani, supra, 334 Ga. App. at 179-180 (1) (a), the plain language of the UCC shows no intent to displace the provisions of OCGA § 44-12-24. Moreover, in the first sentence of that Code section, the General Assembly expressly removed two provisions of the UCC from its scope: "Except for those situations governed by Code Sections 11-2-210 and 11-9-406 . . . ." Applying the rules of statutory construction,

> "Expressum facit cessare tacitum" (if some things are expressly mentioned, the inference is stronger that those omitted were intended to be excluded) and its companion, the venerable principle,

10

"Expressio unius est exclusio alterius" ("The express mention of one thing implies the exclusion of another"), the list of actions in OCGA § [44-12-24] is presumed to exclude actions not specifically listed. [Cits.]

Alexander Properties Group v. Doe, 280 Ga. 306, 309 (1) (626 SE2d 497) (2006). The UCC therefore does not preempt the application of OCGA § 44-12-24 to RES-GA's underlying claim under UFTA.

3. Finally, RES-GA asserts that OCGA § 44-12-24 is preempted by the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. 101-73, 103 Stat. 183 ("FIRREA").[7] It relies upon 12 USC § 1821 (d) (2) (A) (i), which provides:

> (A)  Successor to institution. The Corporation[8] shall, as conservator or receiver, and by operation of law, succeed to —
> (i)  all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution[.]

Acknowledging that FIRREA contains no language "stating that [its application]

---

[7] RES-GA Hightower, LLC attempted to assert preemption by FIRREA in Golshani, supra, but the Court of Appeals found that the argument was waived because it was raised for the first time on appeal. 334 Ga. App. at 182 (2).

[8] The term "Corporation" means the Federal Deposit Insurance Corporation. 12 USC § 1811 (a).

extended to subsequent assignees," RES-GA nevertheless asserts that it "stepped into the shoes" of the bank as a downstream or subsequent assignee, and therefore is not subject to the nonassignment provisions of OCGA § 44-12-24. We disagree.

FIRREA and the decisions cited by RES-GA expressly refer only to the power of the *FDIC* to assign or transfer assets of the institution. RES-GA's lengthy discussion of the rights and powers of the FDIC and the public policy questions involved therefore is wholly irrelevant to the question of whether powers granted to the FDIC may be extended to subsequent downstream assignments or transfers between *private entities or individuals*.[9]

RES-GA argues that, because FIRREA "is silent on that issue," it therefore "is *not* plain from its face that it does not extend to the FDIC's subsequent assignees" (emphasis in original), and the trial court should have concluded that FIRREA preempted OCGA § 44-12-24. But this contention runs directly counter to the well-established rule that "Georgia law is preempted only (1) where there is direct conflict between state and federal regulation; (2) where

---

[9] Another case decided today, Community & Southern Bank v. Lovell, 302 Ga. 375 (807 SE2d 444) (2017), is distinguished on its facts because it involves a direct assignee of the FDIC rather than a subsequent downstream assignee such as RES-GA.

12

state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress; or (3) where Congress has occupied the field in a given area so as to oust all state regulation. [Cits.]" Castillo-Solis v. State, 292 Ga. 755, 763 (5) (740 SE2d 583) (2013). As the United States Supreme Court has noted,

> we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law. [Cits.]

O'Melveny & Myers v. Fed. Deposit Ins. Corp., 512 U. S. 79, 85 (II) (114 SCt 2048, 129 LE2d 67) (1994). "Thus, to prevail on [its] preemption claim, Appellant was required to show the 'clear and manifest purpose of Congress' to preempt [OCGA § 44-12-24]" with respect to downstream assignees. Castillo-Solis, supra, 292 Ga. at 763 (5). This RES-GA has failed to do, and OCGA § 44-12-24 therefore bars the underlying claim. RES-GA is therefore unable to establish a claim for legal malpractice as a matter of law, and the trial court did not err in dismissing its complaint.

13

Judgment affirmed. All the Justices concur.

Decided October 30, 2017.

Preemption; constitutional question. Fulton Superior Court. Before Judge Newkirk.

Neel, Robinson & Stafford, Shawn D. Stafford, Emilie O. Denmark, Kate B. Klug, for appellant.

Freeman Mathis & Gary, Dana K. Maine, Kevin R. Stone, for appellees.