**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2020**

# In the Court of Appeals of Georgia

A19A2267. STAR RESIDENTIAL, LLC et al. v. HERNANDEZ.

DOYLE, Presiding Judge.

In this interlocutory appeal, Star Residential, LLC, and Terraces at Brookhaven, LLC, (the "Defendants") appeal a trial court order denying their motion to dismiss certain claims brought against them by Manuel Hernandez seeking damages for injuries he received in a shooting at his apartment complex. The Defendants contend that the trial court erred by ruling that (1) Hernandez has alleged a viable personal injury claim under the Georgia Street Gang Terrorism and Prevention Act ("GSGTPA"),[1] and (2) Hernandez has alleged a viable negligence per se claim based on city and county nuisance ordinances. For the reasons that follow, we affirm.

[1] OCGA § 16-15-1 et seq.

The relevant factual background is not in dispute. Hernandez's complaint alleges that he was a tenant in an apartment complex owned by Terraces at Brookhaven, LLC, and operated by Star Residential, LLC. In 2017, when Hernandez approached the doorway to his apartment, he was shot from behind in an unprovoked attack and robbery involving two shooters and a getaway driver. Hernandez survived the attack but was paralyzed from the waist down.

Based on his injuries, Hernandez sued the Defendants, alleging claims of negligent security/premises liability and nuisance, later amending his complaint to refine the nuisance claim under the GSGTPA and add claims for negligence per se based on alleged violations of DeKalb County and City of Brookhaven public nuisance ordinances. The Defendants answered and moved to dismiss the claims based on the GSGTPA and local nuisance ordinances. Following a hearing, the trial court denied the motion, and this Court granted the Defendants' application for interlocutory review.[2]

---

[2] The Georgia Defense Lawyers Association filed an amicus curiae brief reiterating many of the same arguments made by the appellants and making new arguments hinging on constitutional questions. The GDLA concedes that the constitutional questions were not raised in the trial court nor distinctly ruled upon by that court. Therefore, those questions are not properly before us. See *Smith v. Baptiste*, 287 Ga. 23, 30 (694 SE2d 83) (2010) ("Because Appellees did not raise this constitutional issue in the trial court and obtain a distinct ruling on it from that court,

1. The Defendants contend that the trial court erred by denying their motion to dismiss Hernandez's claim (Count 2) predicated on the GSGTPA. Specifically, the Defendants argue that the language of the GSGTPA does not apply to the claim against them in this case because they merely own and operate the property, and Hernandez does not allege that the Defendants were involved in the shooting. Based on the breadth of the language of the GSGTPA and its clear instruction that the finder

---

the issue cannot be considered for the first time in this Court."). Further, the constitutional questions raised by the GDLA appear to be issues of first impression. Thus, even if those questions had been raised and distinctly ruled upon, this Court lacks jurisdiction to consider them. See *City of Decatur v. DeKalb County*, 284 Ga. 434, 436-437 (2) (668 SE2d 247) (2008) ("The Court of Appeals has jurisdiction when the constitutionality of a state law is questioned if the law has been held to be constitutional against the same attack being made, as such a case requires merely an application of unquestioned and unambiguous constitutional provisions.") (punctuation omitted)).

of fact determine whether a claim falls within the Act's legislative intent,[3] we discern no reversible error.

As a threshold matter, we note that

a motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's

---

[3] We note that the record contains one federal and three state trial court orders where the court either granted motions to dismiss or denied motions to amend similar GSGTPA claims. Those courts disregarded the statute's clear mandate that the "finder of fact determine[] that the action is consistent with the intent of the general assembly," and instead substituted their own judgment as to that issue. For example, the United States District Court for the Northern District concluded as follows: "The Court's review of the above statutory language informs that Plaintiff's proposed claim against Defendants is not permitted by the statute and that a judgment on such a claim in Plaintiff's favor would not be consistent with the General Assembly's intent." Thus, not only are those orders not binding, the reasoning is not persuasive.

favor. On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo.[4]

Our substantive analysis begins with the familiar rules of statutory construction.

A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, *where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends*.[5]

Here, Hernandez's nuisance count relies on OCGA § 16-15-7, which provides:

(a) Any real property which is erected, established, maintained, owned, leased, *or used* by any criminal street gang for the purpose of conducting

---

[4] (Punctuation omitted.) *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 445-446 (807 SE2d 381) (2017).

[5] (Punctuation omitted; emphasis in original.) *Ga. Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 502 (2) (816 SE2d 438) (2018).

criminal gang activity *shall constitute a public nuisance* and may be abated as provided by Title 41, relating to nuisances.[6]

(b) An action to abate a nuisance pursuant to this Code section may be brought by the district attorney, solicitor-general, prosecuting attorney of a municipal court or city, or county attorney in any superior, state, or municipal court.

(c) *Any person who is injured by reason of criminal gang activity shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages*; provided, however, that no cause of action shall arise under this subsection as a result of an otherwise legitimate commercial transaction between parties to a contract or agreement for the sale of lawful goods or property or the sale of securities regulated by Chapter 5 of Title 10 or by the federal Securities and Exchange Commission. Such person shall also recover attorney's fees in the trial and appellate court and costs of investigation and litigation reasonably incurred. *All averments of a cause of action under this subsection shall be stated with particularity. No judgment shall be awarded unless the finder of fact determines that the action is consistent*

---

[6] See generally OCGA § 41-1-3 ("A public nuisance generally gives no right of action to any individual. However, *if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action*.") (emphasis supplied); *Hammond v. City of Warner Robins*, 224 Ga. App. 684, 689 (482 SE2d 422) (1997) ("Under OCGA § 41-1-3. . . , if an individual has 'special damages,' then the individual has a right of action.").

*with the intent of the General Assembly as set forth in Code Section 16-15-2.*

(d)  The state, any political subdivision thereof, or any person aggrieved by a criminal street gang or criminal gang activity may bring an action to enjoin violations of this chapter in the same manner as provided in Code Section 16-14-6.[7]

The plain language of subsection (c) is clear that "[a]ny person who is injured by reason of criminal gang activity shall have a cause of action" for treble damages. The subsection is also explicit that a judgment on the cause of action is not available "unless the finder of fact determines that the action is consistent with the intent of the General Assembly as set forth in Code Section 16-15-2." That Code section provides:

(a)  The General Assembly finds and declares that it is the right of every person to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals. It is not the intent of this chapter to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. The General Assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever, to associate lawfully with others who share similar beliefs,

---

[7] (Emphasis supplied.)

to petition lawfully constituted authority for a redress of perceived grievances, and to participate in the electoral process.

(b) The General Assembly, however, further finds that the State of Georgia is in a state of crisis which has been caused by violent criminal street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected.

(c) The General Assembly finds that there are criminal street gangs operating in Georgia and that the number of gang related murders is increasing. It is the intent of the General Assembly in enacting this chapter to seek the eradication of criminal activity by criminal street gangs by focusing upon criminal gang activity and upon the organized nature of criminal street gangs which together are the chief source of terror created by criminal street gangs.

(d) The General Assembly further finds that an effective means of punishing and deterring the criminal activities of criminal street gangs is through forfeiture of the profits, proceeds, and instrumentalities acquired, accumulated, or used by criminal street gangs.

Thus, OCGA § 16-15-7 provides for a cause of action for treble damages to persons injured by reason of criminal gang activity if the factfinder determines that the action is consistent with the above codified legislative intent.[8]

Notably, the statute is silent as to the nature of the cause of action or the intended defendant of such an action. The GSGTPA does define "criminal gang activity" to include "the commission . . . of . . . [a]ny criminal offense in the State of

---

[8] OCGA § 16-15-7 (c) also requires that "[a]ll averments of a cause of action under this subsection shall be stated with particularity." We question whether the complaint pleaded sufficiently particular facts showing that the two shooters and getaway driver were part of a criminal street gang because the complaint included only general statements followed by legal conclusions that Hernandez was injured "by the coordinated violent acts of three (3) individuals and thereby a criminal street gang," and there were no specific allegations of a common name, identifying attire, or other distinguishing characteristics. See OCGA § 16-15-3 (3) ("'Criminal street gang' means any . . . group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in [OCGA § 16-15-3 (1) (J)]. The existence of such . . . group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics, including, but not limited to, common activities, customs, or behaviors.") Nevertheless, the trial court explicitly ruled that the complaint met the particularity standard, and the Defendants do not challenge this ruling on appeal. See *Gresham v. Harris*, 349 Ga. App. 134, 138, n.10 (825 SE2d 516) (2019) ("[The appellant] has waived, then, any claim that the trial court erred in this respect by failing to enumerate it as an error and provide any supporting argument."). Even so, to the extent the complaint failed to provide adequate particularity, the proper remedy would be to treat the motion to dismiss as a motion for a more definite statement and proceed on that basis. See, e.g., *Roberts v. JP Morgan Chase Bank, Natl. Assn.*, 342 Ga. App. 73, 78-79 (3) (802 SE2d 880) (2017).

Georgia . . . that involves violence, possession of a weapon, or use of a weapon . . . ,"[9] and it appears plain that the violent injury Hernandez alleges he received falls within this type of conduct.[10] The statute is also explicit that it is for the *factfinder* to determine whether the action is consistent with the legislative intent expressed in OCGA § 16-15-2.[11] Thus, whether the present action is consistent with the intent set forth in OCGA § 16-15-2 is not a threshold issue for courts to resolve,[12] particularly at the motion to dismiss stage, and we must give effect to that policy choice.

The facts alleged in Hernandez's complaint, which we must construe in his favor at this stage of the litigation, state that: criminal activity and numerous shootings were the result of gang activity at his apartment complex ; his apartment complex was used by criminal street gangs for the purpose of conducting gang activity ; lack of adequate security provided by the Defendants "enabled criminal street gangs to overtake the property to the point that residents were exposed to living

[9] OCGA § 16-15-3 (1) (J).

[10] The first amended complaint, in paragraph 32, alleges that Hernandez "was violently robbed and shot at gunpoint. . . ."

[11] See OCGA § 16-15-7 (c).

[12] A court sitting as the factfinder in a bench trial could, of course, appropriately reach this question.

in an environment that was equivalent to a 'war zone'"; and as a proximate result of the dangerous conditions maintained by the Defendants at his apartment complex, Hernandez was injured by criminal street gang activity. We cannot say as a matter of law that Hernandez "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief"[13] he seeks. Accordingly, based on the broad definition of criminal gang activity, the role of the factfinder in determining whether an action is consistent with the intent of the GSGTPA, and the standard applicable to motions to dismiss, we affirm the trial court's denial of the Defendants' motion to dismiss Hernandez's claim under the GSGTPA.

2. The Defendants also contend that the trial court erred by denying their motion to dismiss Hernandez's negligence per se claims predicated on alleged violations of DeKalb County and City of Brookhaven nuisance codes, arguing that no duty to Hernandez is created by the respective nuisance code language. Based on the language of the ordinances and Hernandez's complaint, we disagree.

"[N]egligence per se arises when a statute [or ordinance] is violated, the person injured by the violation is within the class of persons the [ordinance] was intended to protect, and the harm complained of was the harm the [ordinance] was intended to

___

[13] *RES-GA McDonough, LLC*, 302 Ga. at 446.

11

guard against."[14] The ordinances at issue here contain mirroring language, as provided, for example, in the Brookhaven nuisance ordinance:

> The governing authority of the [city/county] finds that nuisances are such activities and conditions that cause a demonstrable adverse impact on the community. These activities and conditions may be associated with illegal criminal activity that has also been proven to have a demonstrable adverse impact on community residences and results in neighborhood blight. The [city/county] finds that there is a substantial need directly related to the public health, safety[,] and general welfare of its citizens to comprehensively address these concerns through the adoption of the following regulations. The purpose and intent of the governing authority . . . in enacting the ordinance . . . are as follows:
>
> (1) To state that it is the duty of the owner of every . . . property . . . to maintain . . . such . . . property in conformance with applicable codes . . . which regulate and prohibit activities on property and which declare it to be a public nuisance to . . . maintain any . . . property in violation of such codes or ordinances; . . .
>
> (5) To protect the health, welfare and safety of the citizens . . . by the removal of both criminal perpetrators and housing blight on the community; . . .

---

[14] *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 845 (2) (797 SE2d 87) (2017).

(7) To promote the safety of its citizens. . . .

In its order, the trial court relied on additional language declaring buildings used for "prostitution, illegal gambling, or in connection with the commission of drug crimes . . . to be a public nuisance."[15]

The Defendants argue that Hernandez has not identified an ordinance establishing a duty owed to him that they violated. But as pointed out by the trial court, the ordinances at issue create a duty on the part of owners to maintain property in conformance with applicable ordinances, and the stated purpose of the ordinances is to protect the safety of citizens by reducing nuisances associated with criminal activity. As noted in Division 1 of this opinion, Hernandez alleged that the Defendants maintained the property in such a way as to create a "war zone" of violence and criminal activity at the apartment complex. The complaint's allegations

---

[15] We note that this language does not appear in the appellate record. See generally *Whitfield v. City of Atlanta*, 296 Ga. 641 (769 SE2d 76) (2015) ("City and county ordinances must be alleged and proven in order to be considered by the superior and appellate courts of this State. The proper method of proving a city ordinance is production of the original ordinance or a certified copy thereof.") (citation omitted). In light of our analysis and the ordinance language in the record, the failure to include this specific ordinance language is not fatal to Hernandez's claim at the motion to dismiss stage.

are sufficient to survive a motion to dismiss the claims based on alleged violations of the DeKalb County and Brookhaven ordinances.

> [A] motion to dismiss for failure to state a claim should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. Put another way, if, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.[16]

The ordinances at issue expressly contemplate that residents such as Hernandez could be exposed to the criminal activity that the ordinances are designed to reduce. And Hernandez's complaint alleges that his injury was due to an environment allegedly maintained by the Defendants in violation of the local ordinances at issue. Accordingly, based on the record before us, the trial court did not err by denying the Defendants' motion to dismiss Hernandez's negligence per se claims.

*Judgment affirmed. Coomer, J., concurs; Markle, J., concurs fully and specially.*

---

[16] (Citations and punctuation omitted.) *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 752 (2) (751 SE2d 545) (2013).

14

A19A2267. STAR RESIDENTIAL, LLC et al. v. HERNANDEZ

MARKLE, Judge, concurring fully and specially.

I fully concur in the majority's conclusion that the trial court properly denied the motion to dismiss the negligence per se and nuisance claims. I write separately to emphasize the unusual – and possibly undesirable – procedural posture this result creates.

> In interpreting the statute at issue, we are mindful of the applicable principles of statutory construction and look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.

(Citation and punctuation omitted.) *State v. Rich*, 348 Ga. App. 467, 471 (823 SE2d 563) (2019).

Under OCGA § 16-15-7 (c), "any person who is injured by reason of criminal gang activity shall have a cause of action . . . [and] [n]o *judgment shall be awarded unless the finder of fact determines that the action is consistent with*" the legislative intent as set forth in the statute. See also OCGA § 16-15-2. This language is plain and unambiguous.

Although the statute is silent as to *who* is the proper defendant, the plain language makes it clear that the factfinder is to decide whether the action comports with the legislative intent. I am concerned, however, that this reading causes the unintended consequence of allowing *the jury* to engage in statutory interpretation and determine whether the landlord or property owner is a proper defendant even if there was no evidence the landlord or property owner participated in the gang activity.[1]

---

[1] Because we are considering the denial of a motion to dismiss, we must take the allegations in the complaint as true and resolve any doubts in the plaintiff's favor. *Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014). Here, Hernandez alleged that the real property was "used by one or more criminal street gangs for the purpose of conducting criminal gang activity," that "[t]he lack of adequate security at the [complex] enabled criminal street gangs to overtake the property," and "that by turning a blind eye towards criminal activity for the sake of their own profits, Defendants gave criminal street gangs the run of the [complex]." (Punctuation omitted.). I question whether these allegations are even sufficient to satisfy the legislative intent of "punishing and deterring" the street gang's activities by "forfeiture of the profits, proceeds, and instrumentalities acquired, accumulated, or *used by* criminal street gangs." OCGA § 16-15-2 (d). But at this stage of the proceedings, we must resolve this doubt in Hernandez's favor.

2

Moreover, by placing this decision in the hands of the factfinder, this interpretation will essentially eviscerate the summary judgment statute, OCGA § 9-11-56.

But this is clearly what the statute says, and, to the extent it leads to an absurd result, the remedy is with the legislature. If the General Assembly "enacted into law something different from what it intended, then it should amend the statute to conform to its intent." (Citations omitted.) *Georgia Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 506 (816 SE2d 438) (Dillard, J. concurring).

I am authorized to state that Presiding Judge Doyle joins this special concurrence.